In re Charles T. BOBROFF, Debtor.

Charles T. BOBROFF

v.

CONTINENTAL BANK, Frank Leis, Blank, Rome, Comisky & McCauley, Andrew D. Bershad, Esq., and Samuel H. Becker, Esq.

Civ. A. No. 84–1814.

United States District Court, E.D. Pennsylvania.

July 25, 1984.

## OPINION

CAHN, District Judge.

In this bankruptcy action, the debtor appeals from the bankruptcy court's grant of summary judgment to defendants on the debtor's claims of defamation and tortious interference with contractual relations. I find that the bankruptcy court had no jurisdiction over this matter, and therefore the judgment of the court below will be reversed, 37 B.R. 847, and the case will be remanded to the Court of Common Pleas of Philadelphia County.

### I. *Facts*

The debtor, Charles T. Bobroff, formerly operated a shoe and leather goods store. In 1979, the debtor secured a loan from Continental Bank for business use; the debt was secured by a second mortgage upon the debtor's home and by a security interest in property of the debtor's busi-

ness. The debtor had contracted with Guardian Life Insurance Co. for the issuance of ten policies of disability insurance. Under these policies, in the event of disability, Guardian would reimburse the debtor for business overhead, pay a monthly amount to Continental Bank as loss payee, and pay monthly amounts to the debtor personally. In June of 1980, the debtor became disabled due to a psychiatric episode, and Guardian began paying under these policies, on a somewhat irregular basis. The debtor then defaulted on the debt owed to Continental. The Bank obtained a judgment against him in February of 1981 in the Court of Common Pleas of Philadelphia County. On April 24, 1981, the debtor filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code.

Shortly after the petition in bankruptcy was filed, counsel for Continental, the law firm of Blank, Rome, Comisky & McCauley, deposed one Jane Engel, a friend of the debtor's. Ms. Engel stated that the debtor was storing items previously displayed at the debtor's store (and presumably subject to Continental's security interest) at her apartment and at the garage of a Mrs. Spector; and that the debtor stated to her that he had deliberately concealed three valuable lithographs from the Bank. The debtor had previously stated under oath that no one other than he had possession of any furnishings or art work belonging to his estate. The Blank, Rome firm informed the bankruptcy court of the deposition testimony, and the court ordered that the debtor's residence and business and the Spector garage be padlocked pending an inventory by the trustee.

Additional relevant events are conversations by Frank Leis, an employee of Continental, and by members of the Blank, Rome firm with Guardian, regarding the debtor's disability policies. Following these conversations Guardian terminated payments on all of the disability policies it had issued to the debtor.

On February 22, 1983, the debtor commenced an action in the Court of Common Pleas of Philadelphia County against Continental Bank, its employee, Frank Leis, its legal counsel, the Blank, Rome office, and two members of the Blank, Rome firm, Andrew D. Bershad, Esq., and Samuel H. Becker, Esq. The defendants filed an application in the bankruptcy court for removal of the action to that court [1] on March 16, 1983, stating that the debtor's action in the state court was a "civil proceeding related to a case under title 11" and that therefore the bankruptcy court had jurisdiction over the matter. The case was then automatically removed to the bankruptcy court, and the debtor's motion to remand the case to the Pennsylvania Court of Common Pleas was denied.

In a "form of complaint" attached to the motion to remand, the debtor set forth three claims against the defendants: malicious prosecution, defamation, and interference with contractual relations. The parties subsequently agreed to a voluntary dismissal of the malicious prosecution cause of action. Debtor claimed that defendants had damaged his reputation in the community by stating that he was concealing assets from the bank and from the bankruptcy court. The debtor further claimed that defendants interfered with his contractual relations with Guardian Insurance Co. by inducing Guardian to cut off further payments to him under his policies of disability insurance. On March 5, 1984, the bankruptcy court granted summary judgment to defendants on both claims. This appeal followed.

## II. *Jurisdiction*

The Bankruptcy Act of 1978 gave the United States district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28

---

**1.** The petition for removal was filed under 28 U.S.C. § 1478(a)(1982), which provides:

A party may remove any ... cause of action in a civil action ... to the bankruptcy court

for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such ... cause of action.

U.S.C. § 1471(b) (1982). The Act also conveyed "all of the jurisdiction" conferred by section 1471(b) upon the district courts to the "bankruptcy court for the district in which a case under title 11 is commenced." 28 U.S.C. § 1471(c) (1982). In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that, absent consent of the litigants, a state common law action not made subject to a federal rule of decision and related only peripherally to an adjudication of bankruptcy under federal law must be heard by a court established under Article III of the U.S. Constitution, if it is to be heard by any agency of the United States. Insofar as the 1978 Act confers direct, non-derivative jurisdiction over "related cases" to bankruptcy courts established without the Article III tenure and salary guarantees, the Court held, the Act is unconstitutional. Subsequent decisions interpret *Northern Pipeline* as invalidating section 1471(c) and leaving the jurisdictional grant to the district courts in section 1471(b) intact. *See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 200 (3d Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).

**2.** In *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 261 (6th Cir.1983), the Interim Rule was held to be constitutional.

**3.** *But see Frank v. Arnold (In re Morrissey),* 717 F.2d 100, 104 & n. 7 (3d Cir.1983) (apparently extending "clearly erroneous" standard of review as defined in Bankruptcy Rule 8013 to proceedings "related to" bankruptcy).

**4.** The 1984 Act defines "core proceeding" to include:
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a Plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;

In the wake of *Northern Pipeline* an "Interim Rule" was promulgated governing bankruptcy jurisdiction pending corrective legislation by Congress.[2] Although all civil proceedings "related to" cases brought under Title 11 are automatically referred to bankruptcy courts under the Rule, the bankruptcy judges may not issue binding judgments in "related" proceedings, but are limited to submissions of findings of fact and proposed rulings which must be reviewed *de novo* by the district court. Interim Rule § (e)(2).[3] "Related" proceedings are defined in part by the Rule as "civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a State court ... includ[ing], but ... not limited to, claims brought by an estate against parties who have not filed claims against the estate." Interim Rule § (d)(3)(A).

In the recent Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, Congress codified into positive law the provisions of the Interim Rule applicable to proceedings "related to" bankruptcy, providing:

A bankruptcy judge may hear a proceeding that is not a core proceeding[4] but

(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations as to the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor/creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
Bankruptcy Amendments & Federal Judgeship Act of 1984, § 157(b)(2). Under § 157(b)(1), bankruptcy judges may enter final orders in "core proceedings," which orders are appealable

that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Bankruptcy Amendments & Federal Judgeship Act of 1984, § 157(c)(1).[5]

Under both the Interim Rule and the 1984 Bankruptcy Amendments, this court, and derivatively, the bankruptcy court, have jurisdiction over cases "related to" proceedings arising under title 11. When such a case is initially heard by a bankruptcy judge, this court must review de novo the bankruptcy judge's findings and conclusions. As applied to this case, if the debtor's claims against defendants are "related to" the debtor's pending liquidation proceedings under chapter 7 of the Bankruptcy Code, the bankruptcy court below had jurisdiction to entertain this action and to recommend that summary judgment be granted to defendants on debtor's claims, and this court has the power to review the record below de novo and to adopt or reject the bankruptcy court's recommendation. Thus, the central issue to be decided in this case is whether a debtor's action against a creditor and its agents for defamation and interference with contractual relations, arising out of events occurring following the filing of debtor's bankruptcy petition, qualifies as a proceeding "related to" an action arising under title 11 of the Bankruptcy Code, and therefore falls within the

jurisdiction of the district and bankruptcy courts of the United States.

### III. The Scope of "Related" Jurisdiction Under the Bankruptcy Code

Congress is given power in section 8 of Article I of the Constitution "To establish ... uniform laws on the subject of bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. Congress has enacted three bankruptcy statutes, the Acts of 1867, 1898, and 1978. These Acts set forth procedures for bankruptcy adjudications and for the adjustment of the rights of debtors and creditors in bankruptcy cases, thus making the core bankruptcy proceedings subject to federal rules of decisions under the authority of Article I of the Constitution. Under these Acts, core bankruptcy proceedings became cases "arising under [the] Constitution [or] laws of the United States" to which the judicial power exercised by courts of the United States extends under Article III of the Constitution, U.S. Const. art. III, § 2, cl. 1.

The question arises to what extent courts of the United States may exercise jurisdiction over actions subject only to state-created rules of decision that are in some way related to a pending bankruptcy proceeding, when no independent ground for federal jurisdiction exists, as in this case. In the 1978 Bankruptcy Act, Congress interpreted its Article I authority as empowering it to confer jurisdiction upon the bankruptcy courts "over all litigation having a significant connection with bankruptcy," H.R. Rep. No. 95–595, 5th Cong., 2d Sess. 42–52, *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 6009.[6] The Supreme

---

to the district courts under § 158(a), "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts," § 158(c). Debtor's action against defendants here does not fall within the 1984 Act's definition of "core proceeding."

**5.** The 1984 Act also provides that with the consent of all the parties to an action "related to" a case under title 11, the bankruptcy judge may enter final orders, subject to review in the district court in the same manner as district court final orders are reviewed in the courts of ap-

peals. Bankruptcy Amendments and Federal Judgeship Act of 1984, § 157(c)(2).

**6.** In the first Bankruptcy Act, enacted in 1867, 14 Stat. 517, Congress gave broad authority to courts of the United States over "suits at law or in equity brought by or against the assignee in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him," and this jurisdiction was exercised without regard to the citizenship of the parties. *Lathrop v. Drake,* 91 U.S. 516, 517, 23 L.Ed. 414 (1875). Apparently, the scope of the jurisdiction of Arti-

Court subsequently struck down the exercise of jurisdiction over state law causes of action having a "significant connection" to bankruptcy by courts established without Article III tenure and salary guarantees, *Northern Pipeline, supra.* The Court did not address, however, the scope of the jurisdiction of *Article III* courts over state law matters that are tangentially related to a federal court bankruptcy proceeding. In *Northern Pipeline* the debtor had filed an action against a third party to recover damages for breach of contract in order to augment its estate. The Court stated that Article III court jurisdiction over this claim rested upon "its relationship to the petition for reorganization." 458 U.S. at 72 n. 26; 458 U.S. at 84 n. 36. Recovery on the state law claim would affect and increase the estate in *Northern Pipeline,* in some sense binding the federal and state actions together and thus conferring jurisdiction upon Article III courts to consider the state cause of action. The close relation between the federal and state claims made it

unnecessary for the *Northern Pipeline* Court to delineate the outer bounds of "related case" jurisdiction. The Court did note that the mere fact of a relationship between the federal and state causes of action did not transform the debtor's state-created private action into a federal matter between the United States and the debtor. *Id.*[7] And it is clear that the Constitution, by restricting Article III court jurisdiction to cases arising under the Constitution and laws of the United States,[8] imposes some limitation on the extension of federal bankruptcy jurisdiction beyond those actions arising under federal bankruptcy law.[9] As noted by the leading commentator on bankruptcy:

> Situations will undoubtedly arise in which the controversy is so tangential to the title 11 case that a court will hold that the case neither arises in nor is related to the title 11 case. In such cases, the bankruptcy court may decide that the exiguous nature of the relationship between the proceeding and the

cle III courts under the 1867 Act to sweep up and decide claims not subject to any federal rule of decision was never addressed. The result of the broad jurisdictional grant contained in that Act was the conduct of bankruptcy litigation "almost wholly in United States courts," 31 Cong.Rec. 1785 (1898). In the Bankruptcy Act of 1898, Congress reacted against the resulting "great inconvenience and much expense to a majority of the people interested in [bankruptcy] litigation," *id.* By section 23 of the 1898 Act, 11 U.S.C. § 46, litigation not "arising under" the federal bankruptcy laws, but merely "related to" federal bankruptcy cases, was excluded from the jurisdiction of courts of the United States, absent consent of all parties. This bifurcation of authority between state and federal courts over matters pertinent to the bankruptcy case resulted in delay and inconvenience, however. For this reason, in the 1978 Bankruptcy Act Congress determined to give an independent bankruptcy court system a "comprehensive grant of jurisdiction ... over all controversies arising out of any bankruptcy or rehabilitation case," H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 42–52, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 6007, and in addition over all matters "related to" bankruptcy proceedings, *see* 28 U.S.C. § 1471(c).

**7.** *See also American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (Holmes, J.) (in general, "a

suit arises under the law that creates the cause of action").

**8.** U.S. Const. Art. III, § 2, cl. 1.

**9.** In *National Mut. Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949), three members of the Court considered the exercise of jurisdiction by federal courts in bankruptcy cases beyond the apparent limits of Article III, and concluded that the bankruptcy jurisdiction derives not from Article III of the Constitution, but from Article I. Using its Article I powers, these Justices would have held, Congress may augment the normal Article III jurisdiction of courts of the United States to include power over state law matters related to bankruptcy. 337 U.S. at 594–99, 69 S.Ct. at 1179–81 (Opinion of Jackson, J., joined by Black and Burton, JJ.). In a concurring opinion in *Tidewater,* Justice Rutledge rejected this view, noting that "[o]f course it is true that Article I is the source of *congressional* power over interstate commerce, taxation, the coining of money, and other powers confided by the states to the exclusive exercise of the national legislature. But ... federal court adjudication of disputes arising pursuant to bankruptcy and other legislation is conventional federal question jurisdiction." 337 U.S. at 611, 69 S.Ct. at 1187. Justice Rutledge's view has since prevailed. *See, e.g., Northern Pipeline,* 458 U.S. at 73, 102 S.Ct. at 2872.

bankruptcy case is such as to fall without the court's jurisdiction. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered. 1 *Collier on Bankruptcy* ¶ 3:01[1][e] (15th ed. 1983) at 3–49.[10]

Under the Bankruptcy Code, it is only those interests in property, including causes of action, that belong to the debtor at the time the petition in bankruptcy is filed that are considered "property of the estate." 11 U.S.C. § 541(a)(1) (1982); *see* S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 5868, 6323.[11] In this case, the events that gave rise to the debtor's action for defamation and interference with contractual relations occurred following the filing of the debtor's petition under chapter 7 of the Bankruptcy Code,[12] and the debtor's causes of action against defendants are therefore not property of the bankrupt estate.[13] The outcome of debtor's action, had it been allowed to continue in the Pennsylvania Court of Common Pleas, would thus in no way af-

fect the estate of the debtor currently being administered under the aegis of the bankruptcy court. Any recovery would accrue to the debtor personally.

■ This action is "related to" the debtor's bankruptcy petition in a literal sense, in that the action is brought by the debtor against his major creditor and the creditor's agents. The identity of the cast of characters in the two actions does not make this case sufficiently "related to" the bankruptcy proceeding in a legal sense, however, to confer jurisdiction upon this court under Article III. The definition of a proceeding as "related to" a bankruptcy matter for purposes of federal court jurisdiction depends upon "the character of the claims asserted and the relationship of those claims to the bankruptcy proceeding, rather than with the status of the parties as debtors or creditors." *Romeo J. Roy, Inc. v. Northern Nat'l Bank (In re Romeo J. Roy, Inc.)*, 32 B.R. 1008, 1010 (D.Me. 1983); *see also Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341 (2d Cir.1983) (when recovery on claim by debtor against landlord would have no effect on estate, action is not within jurisdiction of district court under 11 U.S.C. § 1471(b)).[14]

---

**10.** Justice Frankfurter set forth a coherent framework for evaluating federal court jurisdiction over state law matters related to bankruptcy in his dissenting opinion in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957):

[T]he bankruptcy decisions may be justified by the scope of the bankruptcy power, which may be deemed to sweep within its scope interests analytically outside the "federal question" category, but sufficiently related to the main purpose of bankruptcy to call for comprehensive treatment .... [I]f all the suits by the [estate], even though in many federal courts, are regarded as one litigation for the collection and apportionment of the bankrupt's property, a particular suit by the [estate], under state law, to recover a specific piece of property might be analogized to the ancillary or pendent jurisdiction cases in which, in the disposition of a cause of action, federal courts may pass on state grounds for recovery that are joined to federal grounds. 353 U.S. at 483, 77 S.Ct. at 935 (Frankfurter, J., dissenting).

**11.** Exceptions to this rule, not applicable here, include certain interests in property acquired

within 180 days of the petition, *see* 11 U.S.C. § 541(a)(5), and interests that the *estate* acquires in property following the filing of the petition, 11 U.S.C. § 541(a)(7).

**12.** The debtor's subsequent praecipe to convert the case to one filed under chapter 13 does not change the date of the commencement of the case, for purposes of determining, under 11 U.S.C. § 541, which interests become "property of the estate".

**13.** *See In re Sussman*, 289 F.2d 76, 77 (3d Cir. 1961) (under § 70(a) of 1898 Bankruptcy Act, predecessor to 11 U.S.C. § 541, it is only the rights of action possessed by debtor at time of petition that are considered property of estate); *see also In re Scranton Knitting Mills, Inc.*, 23 F.Supp. 803, 804 (M.D.Pa.1938); *In re Renzulli*, 28 B.R. 41, 46 (Bankr.N.D.Ill.1982).

**14.** *See Miller v. Hill (In re Zip Enterprises, Inc.)*, 28 B.R. 223, 224 (Bankr.M.D.Ala.1983) ("It is clear that not every case in which a debtor might be involved is a case which is a civil proceeding ... related to cases under Title 11, simply because the Bankrupt was involved.

■ In summary, a recovery by debtor on these claims would have no effect on the bankrupt estate; debtor's claims are wholly subject to state law rules of decision, and no nonbankruptcy-related ground of federal jurisdiction over the defendants exists. Even under the broadest interpretation of federal court Article III jurisdiction, courts of the United States have no jurisdiction over this action.

■ Defendants contend that under 28 U.S.C. § 1478(b), this court has no jurisdiction to review the bankruptcy court's refusal to remand this action to the Pennsylvania Court of Common Pleas. Section 1478 provides, in pertinent part:

(a) A party may remove any claim or cause of action in a civil action ... to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

Defendants in effect argue that, even though the bankruptcy court's exercise of jurisdiction was void, this court, by reason of section 1478(b), may not review and correct the error. It would be anomalous to hold, however, that in a "related case" proceeding, where the bankruptcy court may not enter a final order absent consent of the parties, and where this court must review the record below de novo, the bankruptcy court's determination that federal jurisdiction exists over the cause is final and nonreviewable. The only interpretation of section 1478(b) that is consistent both with *Northern Pipeline* and with the principle that a judgment by a court acting without jurisdiction is void, is that this court is precluded from reviewing a refusal to remand only in cases in which the bank-

There may be instances where the jurisdictional nexus is so obscure that jurisdiction cannot

ruptcy court clearly has jurisdiction over the action. A prerequisite to the exercise of jurisdiction by the bankruptcy court over a removed state court action is an allegation by the removing party that the outcome of the action may affect the bankrupt estate. The removing parties here did not, and indeed could not, so allege. On these facts, the bankruptcy court's refusal to remand the action in the face of a challenge to its jurisdiction over debtor's claims is reviewable by this court. *See In re Compton*, 711 F.2d 626, 627 (5th Cir.1983) (district court reversed bankruptcy court's assumption of removal jurisdiction over divorce action and remanded case to state court).

For all of the above reasons, the decision of the court below will be reversed, and the case will be remanded to the Court of Common Pleas of Philadelphia County.

rightfully be placed in bankruptcy.").