In re JODAN'S PRO HARDWARE, Debtor.

Bankruptcy No. 84–01835.

United States Bankruptcy Court, E.D. Wisconsin.

June 24, 1985.

---

Kevin D. Mathews, Milwaukee, Wis., for F & M Bank of Slinger.

Jerome E. Kerkman, Milwaukee, Wis., for Bostwick-Braun Co.

Clifton G. Owens, Milwaukee, Wis., Trustee.

## DECISION AND ORDER

D.E. IHLENFELDT, Bankruptcy Judge.

By agreement with two secured creditors, Bostwick-Braun Company (Bostwick-Braun) and F & M Bank of Slinger (the Bank), and in return for a promised fee for his services, the trustee has sold the debtor's hardware store, inventory and fixtures, the net sale proceeds being approxi-

mately $56,000.[1] According to their briefs, Bostwick-Braun has a claim in the amount of $68,185.98 while the Bank has a claim for $248,855.57. The court has been asked to decide which of the two creditors is entitled to the sale proceeds. Each has a valid security interest as against the trustee, the only question being which of the two creditors has priority over the other.

As the bankruptcy estate will gain nothing from a decision as to which of the two creditors is entitled to the $56,000, the estate having made no claim to the money, this court is without jurisdiction to decide the dispute, unless it impacts upon the estate in some other way. The Court of Appeals for this circuit has stated, "Unless it is impossible to administer completely the bankrupt's estate, a bankruptcy court lacks jurisdiction of a controversy between parties over a matter in which the trustee asserts no interest." *In re Friendship Medical Center, Ltd.*, 710 F.2d 1297 (7th Cir.1983). See also, *In re Pacor, Inc.*, 743 F.2d 984 (3d Cir.1984); *In re Turner*, 724 F.2d 338 (2d Cir.1983); *In re Bobroff*, 43 B.R. 746, 12 BCD 659 (ED PA 1984); *In re Dr. C. Huff Co.*, 44 B.R. 129 (Bk WD KY 1984).

Apart from the disputed sale proceeds, the trustee is holding the sum of $2,190.78 as property of the estate. After payment of administrative expenses and the priority tax claims on file, approximately $553.44 will remain for general unsecured creditors. Bostwick-Braun and the Bank will share pro rata in this $553.44 to the extent of the unsecured portion of their claims. See § 506(a) of the Code. Thus, a decision as to which is entitled to the $56,000 will in turn determine the extent to which each shares, as an unsecured claimant, in the $553.44, i.e., which claim will be reduced by the sale proceeds of $56,000 and which will not. The unsecured portion of their two claims ($261,042.55) plus the other general unsecured claims on file total $272,719.34, for which the $553.44 will provide a divi-

---

1. When a buyer appeared early on, offered to take over the debtor's lease and to pay a fair price for the personal property, it was considered advantageous and in the best interests of all concerned to have a quick sale. With the consent of the secured creditors and, in fact, on shortened notice, the trustee sold the property. There were no objections to the sale.

dend of about 0.2%. Application of that rate to $56,000 indicates a resulting swing, plus or minus, of about $112 in the dividend which each would get on its claim.

Although the dispute involves the very substantial sum of $56,000 as between Bostwick-Braun and the Bank, it can be seen that it has but minimal impact on the bankruptcy estate. Perhaps this is sufficient to confer jurisdiction on the bankruptcy court to decide the matter. If so, the court believes that it should nevertheless abstain from so doing. 28 U.S.C. § 1334(c)(1).[2] The dispute between the parties regarding the priority of their respective liens is governed solely by state law, and involves a legal issue which apparently has never been heard or decided by the Wisconsin courts.[3] Deferring to the state courts will not delay administration of the bankruptcy estate or cause any prejudice to the rights of the other unsecured creditors. Pending the outcome of the litigation in the state courts, the $112 additional dividend to which the loser would be entitled can be held by the trustee, or by agreement of the parties could be invested with the $56,000, in which latter event the bankruptcy case could be closed. Meanwhile, the trustee can proceed to pay the administrative expenses and disburse the balance of the funds in the bankruptcy estate to Bostwick-Braun, the Bank and the other unsecured claimants, without awaiting that determination. Accordingly, pursuant to 28 U.S.C. § 1334(c)(1).

IT IS ORDERED that this court hereby abstains from hearing the controversy between Bostwick-Braun and F & M Bank of Slinger regarding the priority of their respective and competing claims to the proceeds of the trustee's sale.

**2.** 28 U.S.C. § 1334(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**3.** The Bank filed financing statements with the Wisconsin Secretary of State's office on Febru-

ary 1, 1977 and again on January 15, 1982, but did not file a "continuation statement" as provided in Section 409.403(2) of the Wisconsin Statutes. Bostwick-Braun filed a financing statement with the Secretary of State on November 3, 1981. The principal issue here in dispute is whether the Bank's January 15, 1982 financing statement would qualify as a continuation statement under Wis.Stats. § 409.403(3).