**In re RUBIN BROS. FOOTWEAR, INC., a New York Corporation, Debtor.**

**In re RUBIN BROS. FOOTWEAR, INC., a Georgia Corporation, Debtor.**

**RUBIN BROS. FOOTWEAR, INC., a New York Corporation, Rubin Bros. Footwear, Inc., a Georgia Corporation, Elliot Rubin and Cyrus Rubin, Plaintiffs,**

**v.**

**CHEMICAL BANK, Louis A. "Buddy" Solomon and Sanford Astarita, Defendants.**

**No. 83 Civ. 6910 (SWK).**

United States District Court, S.D. New York.

April 10, 1987.

Contino, Ross & Benedict, Sp. Counsel by George R. Hirsch, New York City, Ravin & Kesselhat, Counsel by David N. Ravin, West Orange, N.J., for Rubin Bros. Footwear, Inc. (a New York Corp.), and Rubin Bros. Footwear, Inc. (a Georgia Corp.).

Robert S. Levy, P.C. by Larry N. Stopol, New York City, for Cyrus Rubin and Elliot Rubin.

Davis, Markel, Dwyer & Edwards by David Dunn, New York City, for Louis A. Solomon.

Cravath Swaine & Moore by Robert F. Mullen, Jeffrey S. Facter, Ottenburg, Steindler, Houston & Rosen by Glenn B. Rice, New York City, for Chemical Bank and Sandford Astarita.

KRAM, District Judge.

This case is currently before this Court on defendants' motion to remand the action to Bankruptcy Court and alternatively to dismiss the complaint pursuant to Rules 12(b)(6), 9(b), and 12(b)(1) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and on the ground that the Court lacks jurisdiction over plaintiffs' state law claims.

The plaintiffs in this case, Rubin Bros., Inc. (a New York Corporation), Rubin Bros., Inc. (a Georgia Corporation) (collectively "Rubin Brothers"), and Elliot Rubin and Cyrus Rubin ("the Rubins") are a footwear manufacturing corporation, its wholly owned subsidiary, the corporate president and vice-president respectively. The defendants are Chemical Bank ("Chemical"), Sanford Astarita, an officer and employee of Chemical, and Louis A. Solomon, an individual employed by Rubin Brothers on a temporary basis for business consulting purposes. Rubin Brothers asserts Bankruptcy claims, pursuant to 11 U.S.C. §§ 544, 547 and 548 against Chemical, and RICO claims, pursuant to 18 U.S.C. § 1964(c) against each defendant. Invoking the pendant jurisdiction of this Court,

Rubin Brothers also asserts certain claims under New York and Georgia state law.

## BACKGROUND

Rubin Brothers and Chemical had a longstanding business relationship and by March 1982 Rubin Brothers was indebted to Chemical in the amount of approximately $700,000. At that time, Rubin Brothers was experiencing certain financial difficulties and was unable to meet its financial obligations as they became due.

At some point during the spring of 1982, Cyrus Rubin met with Astarita, who was the Rubin Brothers account officer at Chemical. At that meeting Cyrus Rubin informed Astarita of Rubin Brothers' financial difficulties and its intention to file for bankruptcy. Astarita recommended instead that Rubin Brothers hire Solomon as a consultant to help turn Rubin Brothers' business around and avoid bankruptcy. Astarita allegedly failed to disclose that Solomon, although working for Rubin Brothers, would act on behalf of Chemical, first to change Chemical's debt position in May of 1982 from largely unsecured to totally secured, and then to reduce the debt to Chemical over the course of the next year (finally paying it off in April of 1983), all allegedly to the detriment of unsecured creditors of Rubin Brothers.[1]

## RICO CLAIMS

### Preference Claims

Plaintiffs allege that the activities related to these credit changes were "intentional false and fraudulent actions and representations" employed by Astarita and Solomon in pursuit of their alleged plan to secure and reduce Chemical's debt position with Rubin Brothers. Plaintiffs allege that those "fraudulent actions" were furthered by the use of the mails and the telephone on more than one occasion and were "acts

---

1. Plaintiffs have submitted the following statistics in support of their allegations:

| | Owed to Chemical | Other Creditors |
|---|---|---|
| (Pre-Solomon) April 1982 | $700,000—part long-term —largely unsecured | $200,000 |
| (Solomon Era Begins) May 1982 | $825,000—demand —totally secured | $200,000 |
| (Solomon Era Ends) Early 1983 | $100,000—demand —totally secured | $1,000,000 |

of fraud in connection with a case under Title 11 of the United States Code", and that as a result, defendants are liable under Section 1964 of RICO, and the analogous Georgia RICO statute, for treble damages and attorneys' fees.

*Prime Rate Claims*

In addition, plaintiffs allege that Chemical misrepresented what the rate of interest would be on loans made by Chemical to Rubin Brothers over a period beginning at least as early as 1980 and ending in May 1982. Plaintiffs allege that the interest rate stated in the promissory notes that Rubin Brothers gave Chemical was to be a "certain number of percentage points per annum above the rate of Chemical for prime commercial loans of 90–day maturities ("the prime rate"). The prime rate, according to plaintiffs, was understood to be the interest rate that Chemical gave its most creditworthy borrowers for 90–day unsecured loans.

Plaintiffs claim that in fact Chemical's most creditworthy borrowers received an interest rate that was below the rate upon which Chemical computed the interest rate for loans to Rubin Brothers. As a result, plaintiffs claim, Rubin Brothers paid a higher interest rate than that which plaintiffs understood had been specified in the notes. Plaintiffs allege that Chemical's conduct constituted an "overcharge" and a fraudulent misrepresentation. They also allege that Chemical used the mails on more than one occasion to transmit to Rubin Brothers its periodic statement of interest due, that those mailings constituted mail fraud in violation of 18 U.S.C. § 1341, and that because of that mail fraud, Chemical is liable under RICO for these actions as well.

## BANKRUPTCY CLAIMS

Plaintiffs also claim that the granting of security interests to Chemical in May of 1982 was a fraudulent conveyance and voidable preference under Sections 548, 547 and 544 of the Bankruptcy Code and New York and Georgia common law, as were the subsequent payments on the outstanding debt to Chemical. Plaintiffs ask that the security interests be set aside and that the payments of the Rubin Brothers loan balance between May 1982 and April 1983 be returned.

## STATE LAW CLAIMS

Plaintiffs contend that the defendants' actions also constituted common law fraud, intentional interference with business relations, prima facie tort, and a "fraudulent conspiracy", and seek punitive damages for those claims. Plaintiffs also allege that defendant Solomon has breached his fiduciary duty based on these facts and that Chemical is jointly and severally liable for the actions of Solomon and Astarita, respectively.

Finally, Elliot and Cyrus Rubin assert that they are entitled to rescission of personal guaranties of Rubin Brothers' debts that they had executed in favor of Chemical. They seek rescission on the grounds of estoppel and waiver, cancellation of expiration, misrepresentation of mutual mistake, and "upon general principles of equity".

Plaintiffs originally brought this action in federal district court in Connecticut, from which defendants removed the action to the United States Bankruptcy Court of the Southern District of New York. On February 9, 1984, Bankruptcy Judge Ryan held a hearing on plaintiffs' motion to remand the action to federal district court. The Bankruptcy Judge granted plaintiffs' motion to remand, and the action was then remanded to the district of Connecticut and subsequently transferred to this Court.

## DISCUSSION

### REMAND TO BANKRUPTCY COURT

■ This Court will first consider whether, as plaintiffs allege, 28 U.S.C. § 1478(b) bars it from reviewing Judge Ryan's determination. Section 1478(b) provides:

*Removal to the bankruptcy courts*

(a) A party may remove any claim or cause of action in a civil action, other than a· proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the

district where the civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or decision not so remanding, is not reviewable by appeal or otherwise.

The bar on review, however, applies only to orders based on grounds of equity, and not to orders based on grounds of jurisdiction. *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984); *see, e.g., In re Bobroff*, 43 B.R. 746 (E.D.Pa.1984), *aff'd*, 766 F.2d 797 (3d Cir.1985); *In re Clifford Resources, Inc.*, 24 B.R. 778 (Bkrtcy.S.D.N.Y.1982).

The bankruptcy court clearly remanded this case to federal district court due to its concern over whether it had jurisdiction to hear the case and not for purely equitable reasons. At the hearing on the motion to remand, the court stated "... underlying the whole thing [is] the uncertainty of the jurisdiction of the bankruptcy court to hear this matter." The court then remanded the case "to the court which has indubitable jurisdiction over the various causes of action" in the case. As such this Court may review the bankruptcy court's decision.

Title 28 U.S.C. § 157(d) dictates when a district court may properly withdraw a reference to bankruptcy court and governs in this case where plaintiff seeks in essence to re-refer this case to bankruptcy court. Section 157(d) provides,

The district court may withdraw, in whole or in part, any case or proceeding refer red under this section, on its own motion or timely motion of any party, for cause shown. The district court shall, on timely motion of a party so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 (11 U.S.C. §§ 101 *et seq.*) and other laws of the United States regulating organizations or activities affecting interstate commerce.

■ Plaintiffs' claims include substantial RICO allegations. Defendants contend that RICO is not a statute "regulating" organizations or activities within the meaning of Section 157(d), and therefore the statute is inapplicable. Defendants argue that only those statutes that affirmatively regulate by substantively governing the conduct of entities affecting interstate commerce are statutes "regulating" organizations or activities within the meaning of Section 157(d), and that RICO is a punitive statute rather than a regulatory one and as such does not fall within the Section's purview.

Courts, however, have not drawn the distinction defendants advocate. *See In re White Motor Corp.*, 42 B.R. 693, 703 (N.D. Ohio 1984) (Section 157(d) requires withdrawal when the consideration of non-Code federal statutes is necessary for the resolution of the case or proceeding). In *Michigan Milk Producers Association v. Hunter*, 46 B.R. 214 (N.D.Ohio 1985) the court held that withdrawal of reference to a bankruptcy court was proper where resolution of the case involved "substantial and material consideration of federal antitrust claim"; antitrust statutes, like the RICO statutes, are punitive rather than regulatory.

The full resolution of this case clearly mandates close consideration of plaintiffs' RICO claims, and the case must remain in district court. Defendants' motion to remove the case to bankruptcy court is thus denied.

DISMISSAL

Defendants move to dismiss plaintiffs' RICO claims based on the prime rate allegations because these claims do not allege injury by reason of a RICO violation and do not plead fraud with particularity. Defendants move to dismiss plaintiffs' RICO claims based on the preference allegations because these claims do not allege injury by reason of a RICO violation and because they do not allege a pattern of racketeering activity. In addition, defendants move to dismiss all the RICO claims because plaintiffs fail to allege the existence of an "enterprise". Defendants also move to dis-

miss plaintiffs' voidable preference and fraudulent conveyance claims based on Sections 547 and 548 of the United States Bankruptcy Code, for failure to satisfy the requirements of these Sections. Defendants then move to dismiss the remaining state claims for lack of pendent jurisdiction, or alternatively to dismiss plaintiffs' state fraud claims and tort claims for failure to state a claim.

## RICO CLAIMS

### ENTERPRISE

The RICO statute provides in relevant part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

The defendants contend that all of plaintiffs' RICO claims should be dismissed because plaintiffs have failed to allege the existence of a RICO "enterprise".

### Prime Rate Claims

■ It is established that "with regard to section 1962(c) claims, the 'person' and the 'enterprise' must be distinct and separate entities." *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) (citing *Bennett v. United States Trust Co.*, 770 F.2d 308, 314 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986)) (where only one defendant was named in the complaint it was clear that the defendant was cast as both the "person" and the "enterprise" and the complaint thus failed to allege a cause of action under Section 1962(c)). *See also United States v. Standard Drywall Corp.*, 617 F.Supp. 1283 (E.D.N.Y.1985).

Plaintiffs allege that defendant Chemical violated RICO by falsely representing to Rubin Brothers that the interest on their loans would be based upon the rate for "prime commercial loans" and then by repeatedly mailing to Rubin Brothers fraudulent statements of interest and fees due. Plaintiffs allege that these acts constitute a "pattern of racketeering activity within the meaning of RICO". Plaintiffs have not, however, like the plaintiffs in *Conan*, alleged the existence of a RICO enterprise distinct from defendant Chemical. Defendants' motion to dismiss plaintiffs' RICO claims based on prime rate allegations against defendant Chemical is granted.

### Preference Claims

■ Defendants also contend that plaintiffs have failed to allege the existence of a RICO enterprise in their allegation that defendants have violated the RICO statute through their alleged involvement in recharacterizing Rubin Brothers' debt. The Court disagrees.

"[A]n enterprise includes any union or group of individuals associated in fact. On its face, the definition appears to include both legitimate and illegitimate enterprises within its scope." *United States v. Turkette*, 452 U.S. 576, 580–81, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Plaintiffs' amended complaint describes a conspiracy between defendants Astarita, Solomon, and Chemical to recharacterize plaintiffs' debt to their own advantage (amended complaint ¶¶ 12, 21, and 24). As such plaintiffs have pled a RICO enterprise in these allegations and defendants' motion to dismiss plaintiffs' RICO allegations based on alleged debt recharacterization is denied on this basis.

### RICO PREFERENCE CLAIMS

Defendants, additionally, move to dismiss plaintiffs' RICO claims based on their alleged debt recharacterization because they (1) fail to allege injury by reason of a Section 1962 violation, and (2) fail to allege a pattern of racketeering activity.

■ Defendants' first assertion, that plaintiffs' RICO preference claims do not state a claim under RICO because they do not allege injury resulting from a RICO violation fails on its face under the authority the Supreme Court's decision in *American National Bank and Trust Company of Chicago v. Haroco Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), decid-

ed after the briefs were filed in this case. In *Haroco,* the companion decision to *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the court stated, "The submission that the injury must flow not from the predicate acts themselves but from the fact that they were performed as part of the conduct of an enterprise suffers from the same defects as the amorphous and unfounded restrictions on the RICO private action we rejected in that (the *Sedima* ) case." *Haroco,* 105 S.Ct. at 3292. Plaintiffs, under *Haroco,* are not required to allege an injury resulting from RICO violations; having pleaded injury from the predicate acts they have met the RICO requirements.

Defendants also assert that plaintiffs fail to allege the requisite RICO pattern of racketeering activity because plaintiffs' claims of mail fraud are legally insufficient and plaintiffs do not allege "any offense involving fraud in connection with a case under Title 11". *See* 18 U.S.C. § 1961(1)(D).

Title 18 U.S.C. § 1961 provides, in relevant part, " 'racketeering activity' means ... any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ... or any offense involving bankruptcy fraud." Defendants assert that plaintiffs have attempted and failed to plead mail or wire or bankruptcy fraud, and thus have not alleged racketeering activity as required by the RICO statute.

■ The elements of mail fraud are (1) participation in a scheme to defraud, and (2) knowing use of the mails to further that scheme. *United States v. Rodolitz,* 786 F.2d 77, 80 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986). In addition, specific intent to defraud, reasonable foreseeability of the use of mails in the scheme, materiality of non-disclosures and or affirmative misrepresentations, and the contemplation of some actual harm or injury have been required. *United States v. Bronston,* 658 F.2d 920, 927 (2d Cir. 1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982). *But see Unit-*

*ed States v. Newman,* 664 F.2d 12, 20 (2d Cir.1981) (no contemplation of harm required in mail fraud case based upon breach of fiduciary duty by a government employee).

Defendants claim that plaintiffs have not alleged that Solomon was sent for the purpose of harming Rubin Brothers in any way and that the complaint is devoid of any allegations of fact which would lead to the conclusion that it was "reasonably probable" that Rubin Brothers would suffer injury from any representation made to them about Solomon by Chemical. Defendants also claim that plaintiffs have failed to plead fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure.

■ The Court disagrees. Plaintiffs' amended complaint, meets even the most stringent reading of the requirements of the mail and wire fraud statutes and Rule 9(b). Paragraph 20 of the complaint fully articulates the alleged fraudulent activities involved: (1) the effort by Astarita to persuade the Rubins not to cause a petition for relief under the Bankruptcy Code to be filed on behalf of Rubin Brothers, (2) representations by Astarita in March of 1982 that Solomon would help Rubin Brothers, (3) representations by Solomon that Rubin Brothers would be better off not filing for bankruptcy, (4) representations by Solomon that he would be and was working for the benefit of Rubin Brothers, (5) renegotiation of Rubin Brothers' loans to Chemical, purportedly to provide additional financing to Rubin Brothers, but in fact calculated to make Chemical's position fully secured and to provide funds in order to make just enough payments to the other creditors, to lull them into extending additional credit to Rubin Brothers, (6) falsely informing creditors of Rubin Brothers that payment was on the way when in fact it was not, and (7) deliberate disruption of Rubin Brothers' records and fees by Solomon.

Moreover, the complaint alleges specific intent to defraud; "the fraudulent scheme described above was carried out by Astarita and Solomon and Chemical, pursuant to their conspiracy, knowingly and with the

intent and for the purpose of misleading the Rubins and Rubin Brothers." (amended complaint, ¶ 21.) The complaint alleges actual use of mail and wire modes of communication in furtherance of the allegedly fraudulent acts (amended complaint, ¶ 23). The facts described above are replete with references to potentially material non-disclosures and material misrepresentations by the defendants. Moreover, contemplation of actual harm or injury is alleged; with regard to defendants' allegedly fraudulent inducement of plaintiffs to withhold from filing for bankruptcy, the complaint reads, "Astarita led the Rubins to believe, among other things, that they would be exposed to personal liability on guaranties if they filed a petition when in fact the assets of Rubin Brothers, at that time, were probably sufficient to cover the liabilities and a Chapter 11 proceeding would have been beneficial to Rubin Brothers." (Amended complaint, ¶ 13.)

Because plaintiffs adequately allege mail and wire fraud, and plead on these grounds a racketeering activity for RICO purposes, the Court need not, at this juncture, also address whether they also plead bankruptcy fraud. Defendants' motion to dismiss plaintiffs' RICO preference claims is thus denied.

BANKRUPTCY CLAIMS

*Voidable Preference Claims*

Defendants allege that plaintiffs' voidable preference claims (Counts XII and XIV of the complaint) should be dismissed for failure to satisfy 11 U.S.C. § 547(b)(4)(B)(1) because the transfer in question took place more than ninety days before plaintiff filed its bankruptcy petition and defendant was not an "insider", and (2) because Chemical was fully secured before the payments were made, the payments did not enable Chemical to receive assets it would not otherwise have received and thus are not voidable preferences.

Title 11 U.S.C. § 547 provides in relevant part,

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property ...

(4) made—

(A) on or within ninety days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider.

The definition of an "insider", when the defendant is a corporation, is subject to 11 U.S.C. § 101(25)(B), which defines an "insider" as a director of the debtor, officer of the debtor, or person in control of the debtor. *Id.*

A "person in control" of a corporation may be one with voting control; voting control is held by an individual "who directly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of the debtor"—an "affiliate" under 11 U.S.C. § 101(25)(E). *See In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427, 430 (Bkrtcy. S.D.N.Y.1982). Voting control, however, is not the only means of reaching insider status under the statute. In *In re F & S Central Manufacturing Corp.,* 53 B.R. 842, 848 (Bkrtcy.E.D.N.Y.1985), this Circuit stated, "A creditor who does not deal at arms length with the debtor, but who has a special relationship with the debtor through which it can compel payment of its debt, has sufficient control over the debtor to be deemed an insider." *Id.* Defendants in this case clearly meet these standards.

Defendants claim further that plaintiffs do not plead a voidable preference for Section 547 purposes, because plaintiffs plead no facts which would show that defendants had reason to believe that Rubin Brothers was insolvent in May of 1982 and, therefore, do not meet the requirements of 11 U.S.C. § 547(b)(4)(B)(ii) which provides that a preference is voidable only where the transferee "had reasonable cause to believe the debtor was insolvent". *Id.*

The Court disagrees. The complaint clearly alleges that Rubin Brothers, prior to May 1982, had been experiencing severe financial difficulties and that the defend-

ants had become aware of that fact. According to plaintiffs' allegations, the fact that defendants were aware of Rubin Brothers' financial circumstances and that the company intended to file a bankruptcy petition, actually precipitated the fraudulent relationship with Rubin Brothers. The complaint does allege that at the time Astarita approached Rubin Brothers the assets of the company were probably sufficient to cover its liabilities under a bankruptcy proceeding. This fact sheds no light on whether defendants had reason to believe that Rubin Brothers was insolvent at the time the transfers were ultimately made.

Defendant Chemical also argues that there were no voidable preferences made to it because of the security interest it acquired in May 1982. Chemical argues that since it was secured, it did not get more than it was entitled to via the subsequent transfers and thus these payments to Chemical were not preferences under 11 U.S.C. § 547(b)(5), which provides, in relevant part,

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property ... that enables such creditor to receive more than such creditor would receive if (a) the case were a case under Chapter 7 of this title [11 U.S.C. § 701 *et seq.*]; (b) the transfer had not been made; and (c) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C. §§ 101 *et seq.*]."

■ The grant of a security interest by a debtor, however, is itself a "transfer" within the definition of Section 547 of the Bankruptcy Code. *In re Gruber Bottling Works, Inc.*, 16 B.R. 348, 351 (Bkrtcy.E.D. Pa.1982). As such the actual transaction by which Chemical first became secured was a transfer within the definition of Section 547 and it follows that all the subsequent payments were also voidable preferences.

Defendants' motion to dismiss plaintiffs' claims under Section 547 of the Bankruptcy Code is thus denied.

*Fraudulent Conveyance Claims*

■ Defendants contend that plaintiffs have failed to plead a fraudulent conveyance under Title 11 U.S.C. § 548, which provides, in relevant part,

"(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2) (A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts."

Defendants contend that plaintiffs' allegations do not meet the requirements of this statute because (1) they do not allege that Rubin Brothers received "less than a reasonably equivalent value" for the transfers made to Chemical, (2) do not allege that Rubin Brothers was insolvent when the transfers were made, and (3) do not allege that the transfer was done with actual intent to defraud.

Plaintiffs clearly set forth in their complaint defendants' alleged intent to defraud Rubin Brothers through the series of conveyances that they executed concerning the

Rubin Brothers account in May of 1982. In Paragraph 17, plaintiffs describe the transactions in detail and state that they were executed by the defendants "to lay the groundwork for defrauding (Rubin Brothers') general creditors." Defendants' argument that because defendants publicly filed their security interest in Chemical, thus putting Rubin Brothers' unsecured creditors on notice after the fact, they did not commit a fraudulent transfer, is unavailing. Because plaintiffs have fulfilled the requirement of Section 548(a)(1), the Court will not address whether or not they have met the requirements of Section 548(a)(2) in their allegations.

Defendants' motion to dismiss plaintiffs' claims under Section 548 of the Bankruptcy Code is denied.

STATE LAW CLAIMS [2]

*Fraud*

"A plaintiff desiring to plead a *prima facie* case of fraud under New York law must allege: (1) representation of a material existing fact, (2) falsity, (3) scienter, (4) deception, and (5) injury." *River Plate Reinsurance Co. v. Jay-Mar Group, Ltd.*, 588 F.Supp. 23, 25 (S.D.N.Y.1984). Moreover, "a pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy [Rule 9(b)'s] requirement". *Id.*

Defendants move to dismiss plaintiffs' eleven claims of common law fraud, all set forth in Paragraph 20 of the amended complaint, because none of the claims pleads the elements of fraud.

■ In Paragraph 20(a) the amended complaint alleges a "false and fraudulent effort by Astarita in March of 1982 to persuade the Rubins not to cause a petition for relief under the Bankruptcy Code to be filed on behalf of Rubin Brothers". While the elements of fraud with regard to this action are not spelled out in this paragraph, they are found elsewhere in the complaint. Paragraph 13 of the complaint alleges that Astarita told Rubin Brothers not to file

their petition because they would be exposed to personal liability on their guaranties if they did, when in fact at the time Rubin Brothers' assets could have covered their liabilities. This paragraph alone contains the elements of misrepresentation, falsity, scienter, deception and injury.

In Paragraph 20(b), plaintiffs allege that Astarita falsely represented that "Solomon would help Rubin Brothers in the operation of their business". Paragraph 20(c) contains essentially the flip side of the same allegation charging the defendants with fraudulent non-disclosure of the fact that Solomon would, in fact, be working for Chemical. While these paragraphs themselves do not plead fraud, allegations related to this action contained elsewhere in the complaint sustain the claim. The complaint clearly sets forth the specifics of how Solomon ordered the transaction which secured Chemical's position at the expense of Rubin Brothers' other creditors and Rubin Brothers itself, which the complaint alleges would have been better off had it filed for bankruptcy at the onset.

Paragraph 20(d) of the complaint alleges that Solomon falsely stated that "things were not as bad as the Rubins thought" and that "Rubin Brothers would be better off not seeking relief under the Bankruptcy Code". This claim does not meet the necessary element of falsity because plaintiffs merely allege that Solomon stated his opinion regarding Rubin Brothers' financial position, however erroneous, and not that Solomon knew facts about Rubin Brothers' business that were not known to the plaintiffs and thus made misrepresentations to them. *See e.g., Pittsburgh Coke & Chemical Co. v. Bollo*, 421 F.Supp. 908, 926 (E.D. N.Y.1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977).

Paragraph 20(e) states that Solomon falsely and fraudulently misrepresented to Rubin Brothers that he would be working for the benefit of Rubin Brothers when in fact he was working for Chemical is essentially the same claim as stated in Para-

---

**2.** From the outset the Court acknowledges that defendants only have addressed the dismissability of plaintiffs' pendant state claims; although provided the opportunity, plaintiffs chose not to respond to this aspect of defendants' motion.

graphs 20(b) and 20(c) and should not be dismissed for the same reasons that those claims are not dismissed.

Paragraph 20(f) alleges that Solomon and Astarita falsely and fraudulently renegotiated Rubin Brothers' loans from Chemical, calculated to secure Chemical and lull other creditors into extending additional credit to Rubin Brothers to pay off Chemical. This is the very heart of the fraud alleged by plaintiffs throughout their complaint; these actions are set forth in detail in Paragraph 17 of the complaint, falsity and misrepresentation is pleaded throughout, and the injury alleged was discussed above. Defendants' motion to dismiss these claims is denied.

In Paragraph 20(g) of the complaint plaintiffs allege that defendant Solomon engaged in fraud by *making partial payments to Rubin Brothers' unsecured creditors in order to lull them into extending additional credit to Rubin Brothers to the benefit of Chemical.* Plaintiffs do not allege that Solomon made any statement to the creditors or Rubin Brothers regarding these partial payments which was false. Paragraph 20(g) is thus dismissed for failure to plead the elements of fraud.

In Paragraph 20(h), plaintiffs allege that Solomon committed fraud by promising creditors that payment was on the way when it in fact was not. Plaintiffs do not allege that these statements were material or that the creditors were injured in any way by Solomon's alleged misrepresentations. Paragraph 20(h) of the amended complaint is thus dismissed for failure to plead the elements of fraud.

In Paragraph 20(i), plaintiffs allege that Solomon falsely and fraudulently represented to the creditors that Rubin Brothers had a factoring arrangement with Chemical when in fact it was an accounts receivable financing arrangement. Plaintiffs do not allege that this false statement was material or that the creditors were injured. Paragraph 20(i) of the amended complaint is thus dismissed for failure to plead the elements of fraud.

■ Paragraph 20(j) alleges that Solomon committed fraud by deliberately dis-

rupting the records and files of Rubin Brothers in order to cover his tracks. Plaintiffs do not allege what acts of disruption took place or what records were disrupted and have been lost, and thus have not complied with Rule 9(b)'s requirement to plead fraud with particularity. In addition, plaintiffs have not alleged any intentional false statement of fact by which someone was injured. Paragraph 20(j) of the amended complaint is thus dismissed.

In Paragraph 20(k), plaintiffs allege that Chemical abandoned Rubin Brothers after their debt had been reduced, by refusing to extend credit or honor overdrafts, and threatening Rubin Brothers with personal economic sanctions. Plaintiffs plead no specific instances in compliance with 9(b), nor do they plead any element of a fraud claim. Paragraph 20(k) of the amended complaint is thus dismissed.

## TORT CLAIMS

■ "There is no recovery in prima facie tort unless malevolence is the sole motive for defendant's acts." *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983). Plaintiffs do not allege that the actions of Chemical and Astarita were malicious. Rather, they allege that those actions were motivated by Chemical's economic self-interest in securing its debt position. Plaintiff's prima facie tort claims are thus dismissed for failure to state a claim.

■ The elements of tortious interference with contractual relations are (1) the existence of a valid contract between the plaintiff and the third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a breach of the contract by the third party; and (4) damages caused by the breach. *Martin Ice Cream Co. v. Chipwich, Inc.,* 554 F.Supp. 933, 945 (S.D.N.Y.1983) (applying New York law). Plaintiffs do not allege that any third party lender or customer stopped doing business with Rubin Brothers because of some action taken by Astarita or Chemical. Plaintiffs' claim of tortious interference with business rela-

**358**

tions is thus dismissed for failure to state a claim.[3]

### CONCLUSION

Defendants' motion to remove this case to Bankruptcy Court is denied. Defendants' motion to dismiss plaintiffs' RICO prime rate claim is granted. Defendants' motion to dismiss plaintiffs' RICO preference claim is denied. Defendants' motion to dismiss plaintiffs' claims under Sections 547 and 548 of the bankruptcy code is denied. Defendants' motion to dismiss plaintiffs' fraud claim is denied in part and granted in part. Defendants' motion to dismiss plaintiffs' tort claims is granted.

SO ORDERED.

---

3. In a brief footnote, defendant Chemical also moves to dismiss Count IV of the complaint to the extent that it alleges a conspiracy to commit fraud because plaintiffs have not alleged the agreement essential to a conspiracy, nor have they alleged with any particularity the facts essential to establish that such an agreement existed. This Count, however, incorporates all the prior paragraphs (¶¶ 1–27) in the amended complaint, and by doing so alleges agreement between the defendants as well as facts which support the existence of such an agreement.

Chemical's motion to dismiss Count IV is thus denied, without prejudice. In the same brief footnote, Chemical also moves move to dismiss Count VI which alleges that Solomon was Chemical's agent in the commission of a fraud. This Count also incorporates the prior paragraphs of the complaint which support an agency relationship between Chemical and Solomon. Chemical's motion to dismiss Count VI is thus denied, without prejudice. Chemical's motions to dismiss Count IV and VI are denied without prejudice subject to their full briefing.