**In re COIN PHONES, INC., Debtor.**

**Barbara BALABER–STRAUSS, Trustee of Coin Phones, Inc., Plaintiff,**

v.

**GTE SUPPLY and GTE Leasing Corp., Defendants.**

**Bankruptcy No. 89 B 20451.
No. 92–5333A.**

United States Bankruptcy Court, S.D. New York.

March 29, 1993.

See also 148 B.R. 391.

136

Bodian & Eames, New York City, for GTE Communication Systems Corp. and GTE Leasing Corp.

Kazlow & Kazlow, New York City, for debtor.

DECISION ON MOTION TO DISMISS COMPLAINT AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO WITHDRAW REFERENCE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

GTE Communications Systems Corporation ("GTE Supply") and GTE Leasing Corporation ("GTE Leasing") (collectively "GTE") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b), to dismiss the trustee's adversary complaint. The trustee's complaint seeks to have a prepetition release the debtor gave to GTE in a loan agreement declared a preference or fraudulent transfer and also seeks damages for GTE's alleged breach of warranty and breach of contract concerning coin-operated pay tele-

phones manufactured by GTE for the debtor.

GTE has also moved in the district court for an order withdrawing the reference pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a). At oral argument, the trustee withdrew her objections to GTE's Motion to Withdraw the Reference. However, pursuant to stipulations so ordered by both this court and the Honorable Vincent J. Broderick of the United States District Court for the Southern District of New York, this court will consider GTE's Motion to Dismiss first and then, if necessary, issue proposed findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(d) and the so ordered stipulations with regard to GTE's Motion to Withdraw the Reference.

## FACTUAL BACKGROUND

On July 21, 1989, the debtor filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and was continued in management and possession of its property and business in accordance with §§ 1107 and 1108. The debtor, Coin Phones, Inc., was a New York corporation engaged in the business of vending customer-owned or -leased coin-operated telephones ("cocots").

Both GTE Supply and GTE Leasing are Delaware corporations. The debtor listed GTE Supply as one of its twenty largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007, with a projected claim of $32,741.94. Neither GTE Supply nor GTE Leasing has filed a proof of claim in this case. However, GTE claims that the debtor's obligation to it is approximately $2.2 million.

By order of this court dated July 6, 1990, this case was converted to one under Chapter 7. A trustee was appointed pursuant to 11 U.S.C. § 701 by order dated August 2, 1990 and has remained and served as trustee pursuant to 11 U.S.C. § 702(d).

The trustee filed the instant adversary proceeding against GTE on October 1, 1992, and filed an amended complaint on October 23, 1992 (the "Amended Complaint"). On December 30, 1992, GTE made a motion in the United States District Court for the Southern District of New York for an order pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a) for withdrawal of the reference with regard to the present adversary proceeding. On January 4, 1993, GTE moved this court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012, to dismiss the Amended Complaint.

By separate stipulations, one so ordered by this court on January 26, 1993, and one so ordered by the Honorable Vincent J. Broderick of the United States District Court for the Southern District of New York on February 1, 1993, the trustee and GTE agreed that GTE's Motion to Dismiss would be heard by this court. The stipulations further provided that in the event that this court denies GTE's Motion to Dismiss, GTE's Motion to Withdraw the Reference would be referred to this court for the purpose of issuing to the district court proposed findings of fact and conclusions of law. At oral argument before this court, the trustee withdrew her objections to GTE's Motion to Withdraw the Reference. However, pursuant to the stipulations, this court will determine GTE's Motion to Dismiss the Amended Complaint before turning to, if necessary, GTE's Motion to Withdraw the Reference.

On or about July 22, 1987, GTE Supply and the debtor entered into a distributorship agreement ("GTE Supply Agreement") which provided that the debtor would obtain approximately 1,000 GTE-manufactured cocots from GTE Supply for resale or its own use. The debtor paid approximately $2,300,000.00 for the lease and installation of the GTE-manufactured cocots. The Supply Agreement states that the warranties applicable to the telephones provided for a two-year limitations period for commencing actions:

> Both Supplier and Distributor agree that any direct action hereafter arising out of the relationship between Supplier and Distributor, including any action for al-

leged breach of this Agreement, shall be barred unless commenced by the aggrieved party within two (2) years after the cause of action relating to such matter accrues or within the period of the applicable statute of limitations, whichever is less.

*GTE Supply Agreement,* at § 9.0.

The debtor began experiencing mechanical difficulties with the GTE-manufactured cocots sometime after installation and prior to September of 1988. As a result of these difficulties, the debtor alleges that it suffered at least $2,000,000.00, and perhaps in excess of $4,300,000.00 in damages. *Compare Amended Complaint,* at ¶ 30 *with* ¶ 42.

The trustee alleges that GTE Leasing was affiliated with GTE Supply in that GTE Leasing acted as the leasing agent for GTE Supply, providing the distribution of the GTE manufactured cocots. *Amended Complaint,* at ¶ 4.

On August 24, 1987, GTE Leasing and the debtor entered into a Master Lease Agreement (the "Master Lease") pursuant to which GTE Leasing provided financing for the debtor to obtain the phones. The Master Lease was a financing device. GTE Leasing made no warranties or representations as to the performance of the telephones. *See Master Lease,* at ¶ 6.

On or about September 28, 1988, GTE Supply and the debtor entered into a loan agreement ("Loan Agreement") as part of a restructuring pursuant to which GTE Supply loaned the debtor $200,000.00. Article VI of the Loan Agreement contains the following release granted by the debtor in favor of GTE:

As part of the consideration for the Loan, Borrower [the debtor] hereby revises, releases and forever discharges GTE and its affiliates forever of all debts, demands, actions, suites, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, which against GTE the undersigned, or its successors and assigns now

has or ever had from the beginning of the world to this date.

*Loan Agreement,* at Article VI.

By stipulation so ordered by this court dated February 23, 1990, the debtor rejected the GTE lease. Thereafter, GTE Supply entered a warehouse at which a majority of the GTE-manufactured cocot equipment and parts were stored and allegedly removed in excess of $1,000,000.00 of such equipment.

The First Claim in the Amended Complaint seeks to avoid as a "preference/fraudulent transfer" the debtor's release of the GTE defendants for such claims including breach of contract, breach of implied and express warranty and other tort claims. The trustee's First Claim has combined a preference action with an action for a fraudulent transfer. The alleged preference, namely the release, is contained in the Loan Agreement, which is dated September 28, 1988, and therefore occurred more than 90 days but less than one year prior to the filing of the Chapter 11 case on July 21, 1989. The trustee asserts that GTE was an insider pursuant to 11 U.S.C. § 547(b)(4)(B) as that term is defined in 11 U.S.C. § 101(31). The trustee bases her allegation that GTE was an insider on the alleged fact that a number of GTE Supply stockholders and employees had purchased a "significant portion" of the debtor's stock. *Amended Complaint,* at ¶¶ 29 & 35.

As to the fraudulent transfer allegation contained in the First Claim of the Amended Complaint, which is apparently brought pursuant to 11 U.S.C. § 548(a)(2), the trustee contends that "the transfer was made for less than reasonably equivalent value as it extinguished [the debtor's] claims worth several million dollars in exchange for an additional loan and restructuring of existing debt due by [the debtor]." *Id.* at ¶ 38.

The Second Claim in the Amended Complaint alleges the underlying breach of express and implied warranty claims, breach of contract claims, and seeks damages in excess of $4,300,000.00, representing the cost for all GTE cocots leased by the debtor

and additional expenses and losses. In addition to the Second Claim, the trustee asserts a separate cause of action for willful misrepresentation in paragraph 23 of the Amended Complaint which states:

23. On or about September 1988, GTE Supply representatives, including BART BARTUSEK, made representations to CPI that the cause for the programming problems experienced by CPI were the fault of CPI personnel. At the time such representations were made, GTE knew, or should have known, that these representations were false, and/or GTE exhibited a reckless disregard for the truth in making such representations. Upon information and belief, such representations were made at CPI's offices located at White Plains, New York, and by telephone calls and correspondence between the parties.

*Amended Complaint,* at ¶ 23.

The Third Claim seeks to expunge the entire amount of $32,741.94 owed GTE Supply as scheduled by the debtor in its Chapter 11 petition. The trustee argues that GTE Supply is not entitled to such amount because the debtor's breach of contract and breach of warranty claims exceed this amount and because this amount has already been confiscated by GTE Supply when it seized certain property located in a warehouse.

In the Fourth Claim of the Amended Complaint, the trustee seeks an accounting and return of "CPI assets and properties" GTE Supply retrieved after this court signed an order in which the debtor rejected its lease with GTE Leasing. GTE has offered to provide the trustee with documentation concerning the property retrieved by GTE Supply.

## DISCUSSION

### Motion to Dismiss

GTE seeks to dismiss the trustee's entire complaint for failing to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). A claim may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint must be viewed in a light most favorable to the pleader and its allegations must be accepted as true. *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986); *Fine v. City of New York,* 529 F.2d 70, 75 (2d Cir.1975).

### First Claim

The First Claim in the Trustee's Amended Complaint contains two separate causes of action, one for avoidance of a preference under 11 U.S.C. § 547 and one for avoidance of a fraudulent transfer pursuant to 11 U.S.C. § 548. GTE does not discuss the fraudulent transfer cause of action in its moving papers or in its memoranda. Therefore, that portion of the First Claim remains viable and will not be dismissed. The court now turns to GTE's Motion to Dismiss as it relates to the preference portion of the First Claim.

Section 547(b) of the Bankruptcy Code authorizes trustees to avoid transfer's of a debtor's interest in property "if five conditions are satisfied and unless one of seven exceptions defined in subsection (c) is applicable." *Union Bank v. Wolas,* —— U.S. ——, ——, 112 S.Ct. 527, 529, 116 L.Ed.2d 514 (1991). As to the portion of the First Claim of the Amended Complaint alleging a preference, GTE argues that the trustee cannot avoid the debtor's release of GTE contained in the Loan Agreement by claiming the release is a preference to an insider within the meaning of 11 U.S.C. § 547(b).

The trustee concedes that the preference occurred more than ninety days before the filing of the bankruptcy petition, and that such a preference is voidable only if the creditor was an insider pursuant to 11

U.S.C. § 547(b)(4)(B). The trustee does not make clear in her Amended Complaint upon which part of the definition of "insider" she relies. An "insider" with regard to a corporate debtor is defined by 11 U.S.C. § 101(31) as follows:

(31) "insider" includes—

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B). Section 101(31)(E) also defines "insider" as "an affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E). Section 101(2) of the Bankruptcy Code defines "affiliate," in relevant part, as follows:

"affiliate" means—

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

11 U.S.C. § 101(2)(A).

The trustee argues that the list of persons and entities contained in section 101(31)(B) is not exhaustive, but rather illustrative of those that may qualify as an insider because the rules of construction as set forth in 11 U.S.C. § 102(3) state that the terms "includes" and "including" "are not limiting." Citing *In re Rubin Brothers Footwear, Inc.*, 73 B.R. 346, 354 (S.D.N.Y.1987), and *In re F & S Central Manufacturing Corp.*, 53 B.R. 842, 848 (Bankr.E.D.N.Y.1985), the trustee contends that a creditor may achieve "insider status" if the creditor does not deal at arm's-

length with the debtor and has a special relationship with the debtor through which it can compel payment of its debt. The trustee concludes that because she has set forth in the Amended Complaint the fact that GTE employees held "a significant portion" of the debtor's stock and because the trustee has described the relationship between the debtor and GTE, the question of GTE's insider status may only be resolved at trial.

GTE argues that the Amended Complaint fails to allege that GTE, or any affiliate of GTE, owned 20% of the debtor' stock. Equally as important, GTE asserts that the trustee has not stated how the ownership of the debtor's stock by GTE employees, who are unnamed by the trustee, can be attributed to GTE for purposes of determining whether GTE was an "insider" within the meaning of sections 101(31) and 547(b)(4)(B). GTE distinguishes *Rubin Brothers Footwear* and *F & S Central Manufacturing* as cases in which courts specifically found special relationships that allowed a creditor leverage a creditor would not normally possess. In the present case, GTE points out that the Amended Complaint does not contain such an allegation, and in fact no such relationship existed between the debtor and GTE, which is evidenced by the fact that GTE has not received any payments on the $2.2 million debt it is owed.

In considering whether insider status exists, some courts have mechanically applied sections 101(2) and (31). *In re Kroh Brothers Development Co.*, 137 B.R. 332, 335 (W.D.Mo.1992) (citing cases). Other courts have focused on two factors: (1) the closeness of the relationship between the transferee and the debtor; (2) whether the conduct of the debtor and the transferee was at arm's-length with regard to the transaction. *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir.1992) (citing cases).

The present case does not present facts that allow the mechanical application of the statute, such as those that existed in the *Kroh Brothers* case. There, the court found that a defendant in a preference

action that had as a director a person who owned more than 20% of the debtor's stock was by definition an insider of an affiliate and therefore an insider. *F & S Central Manufacturing* is also distinguishable from the present case. In that case, the court found that the transferee fell within one of the categories set forth in section 101(31), namely a person in control of the debtor, because the transferee would have reacquired full legal control of the debtor had the debtor not made the transfer in question. *F & S Central Manufacturing,* 53 B.R. at 848. In the present case, the Amended Complaint does not contain an allegation that GTE falls within any of the categories set forth in 11 U.S.C. § 101(31).

As to whether the relationship between the debtor and GTE was arm's-length, the Amended Complaint does not set forth one single allegation regarding a special relationship or control over the debtor by GTE. *See, e.g., Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.),* 926 F.2d 1458, 1465–66 (5th Cir.1991); *In re Hyperion Enterprises, Inc.,* 144 B.R. 228 (Bankr.D.R.I.1992). In *Hyperion Enterprises,* the court considered the fact that the transferee lacked any control over the operation of the debtor in determining whether the transferee was an insider. *Id.* at 235. Reliance by the trustee on *In re Rubin Brothers* is unpersuasive. In that case, the court held that a creditor was an insider when the creditor arranged for a debtor to employ a consultant whose express purpose, unbeknownst to the debtor, was to convert the creditor's debt from unsecured to secured and then to reduce it entirely. The court found a special relationship and a lack of arm's-length dealing.

■ One court noted in dismissing a preference claim that adopting the plaintiff's interpretation of "insider" would subject such a large pool of individuals to preference actions that the term insider would be given an "absurd and illogical" meaning. *See In re Oliver,* 142 B.R. 486, 490 (Bankr.M.D.Fla.1992). Here, were this court to adopt the definition of "insider" proposed by the trustee, every entity that negotiated a contract with the debtor with-in one year of the filing would be subjected to a preference attack by the trustee because the contract allegedly created a special relationship for control purposes. *See In re Wescorp., Inc.,* 148 B.R. 161, 163–64 (Bankr.D.Conn.1992). While "an insider can be any entity whose close relationship to the debtor requires careful scrutiny of the questioned transaction," a debtor's inferior bargaining position does not transform a creditor into a control person. *In re Chas P. Young Co.,* 145 B.R. 131, 136 (Bankr.S.D.N.Y.1992) (quoting *In re UVAS Farming Corp.,* 89 B.R. 889, 892 (Bankr. D.N.M.1988)). The Amended Complaint in the present case simply makes conclusory allegations which cannot defeat a motion to dismiss. *McCarthy v. Mayo,* 827 F.2d 1310, 1316 (9th Cir.1987). Accordingly, the portion of the First Claim of the Amended Complaint which seeks to avoid the release as a preference pursuant to 11 U.S.C. § 547 is dismissed.

## Second Claim

The Second Claim in the Amended Complaint alleges breach of contract and breach of express and implied warranties. GTE contends that the underlying breach of warranty claims are time-barred, either by the statute of limitations or by the language of the contract. The GTE Supply Agreement provides that actions must be brought "within two years after the cause of action relating to such matter accrues or within the period of the applicable statute of limitations, whichever is less." *GTE Supply Agreement,* at § 9.0. The Bankruptcy Code extends the time a trustee has to file such an action for two years after the date of the order for relief, unless the time would expire later. 11 U.S.C. § 108(a).

■ Of the three documents at issue in this case, the GTE Supply Agreement, the Master Lease and the Loan Agreement, the GTE Supply Agreement is the only one that contains any warranty and that contract is between GTE Supply and the debtor. *See GTE Supply Agreement,* at § 9. New York's codification of the Uniform Commercial Code provides for a four-year

statute of limitations for such warranty claims, but explicitly states that such time may be shortened by written agreement. N.Y.U.C.C. § 2–725 (McKinney 1964). Therefore, section 9 of the GTE Supply Agreement shortened the trustee's time to bring this action to two years. The last telephones were delivered in June of 1988, and the debtor first began experiencing difficulties with the telephones prior to September of 1988. *See Amended Complaint,* at ¶ 23. Therefore, the Second Claim of the Amended Complaint, which was not commenced until October 1, 1992, approximately four years after the claim accrued, is time-barred under 11 U.S.C. § 108(a)(1).

■ The Second Claim of the Amended Complaint is also time-barred pursuant to 11 U.S.C. § 108(a)(2), which states that a trustee has two years from the entry of the order for relief to commence such an action. The two-year maximum tolling of the statute of limitations that the trustee receives as a result of section 108(a)(2) is significantly different from the two year statute of limitations governing avoidance actions that a trustee has pursuant to 11 U.S.C. § 546. Under section 546(a), the two-year period begins to run from the date the permanent trustee is appointed.[1] Under section 108(a)(2), the two-year tolling of the statute of limitations begins running from the date of the order for relief. In a case that begins as a case under Chapter 11 and then is converted to Chapter 7, the two-year period begins running from the date the order for relief is entered in the Chapter 11 case. *Independent Fire Insurance Co. v. Pender (In re Phillip),* 948 F.2d 985 (5th Cir.1991); *In re Argo Communications Corp.,* 134 B.R. 776, 784–85 (Bankr.S.D.N.Y.1991). At least one court has noted the fact that cases that remain in Chapter 11 for more than two years preclude a trustee from receiving the benefit of section 108(a)(2). *In re Bingham Systems, Inc.,* 139 B.R. 809, 812 (Bankr.

N.D.Miss.1991). The plain meaning of 11 U.S.C. § 348(a) requires such a conclusion. The United States Supreme Court has directed that bankruptcy courts give effect to the plain meaning of the Bankruptcy Code. *Union Bank v. Wolas,* — U.S. —, —, 112 S.Ct. 527, 528, 116 L.Ed.2d 514 (1991).

■ The trustee filed the present adversary complaint on October 2, 1992, more than three years after the order for relief in the Chapter 11 case was entered on July 21, 1989. Consequently, the Second Claim of the Amended Complaint will be dismissed to the extent that it asserts a claim for breach of warranty or breach of contract.

In its Memorandum of Law in Opposition to GTE's Motion to Dismiss the Amended Complaint, the trustee asserts an independent cause of action against GTE for willful misrepresentations made in inducing the debtor to enter into the Loan Agreement, which contained the release, and thereby causing the debtor to refrain from instituting legal action on its claims for breach of contract. The Amended Complaint does not seek this relief as one of the four numbered claims. GTE argues that causes of action for the first time raised in a memorandum of law filed in response to a motion to dismiss an amended complaint should not be considered by a court. GTE further contends that this claim for willful misrepresentation is also time-barred by both the limitations provision contained in Section 9 of the GTE Supply Agreement and 11 U.S.C. § 108. GTE also asserts that the cause of action for willful misrepresentation is precluded by virtue of the release.

■ The facts supporting the willful misrepresentation allegation are recited in the Amended Complaint and although the trustee has not listed this cause of action as one of the four claims, paragraph 23 of the Amended Complaint sufficiently states

---

1. In the present case, the interim trustee became the permanent trustee by operation of law pursuant to 11 U.S.C. § 702(d). Consequently, GTE could not assert a defense to the First Claim of the trustee's Amended Complaint for "prefer-

ence/fraudulent transfer" based on the statute of limitations contained in section 546(a) because the initial complaint was filed within two years of the date the permanent trustee was appointed.

a cause of action and describes the substance of the alleged misrepresentations. However, should this court find that the release set forth in the Loan Agreement was not a fraudulent transfer, the release would preclude the trustee from bringing such a cause of action. Moreover, this claim is time-barred for the same reasons the trustee's claims for breach of warranty and breach of contract are time-barred. The willful misrepresentations occurred in September of 1988, *Amended Complaint,* at ¶ 23, and the complaint was not filed until October 1, 1992. Accordingly, pursuant to section 9 of the GTE Supply Agreement limiting any actions to two years and 11 U.S.C. § 108, the trustee's cause of action for willful misrepresentation is time-barred and will be dismissed.

### Third and Fourth Claims

The Third Claim of the Amended Complaint appears to deny any amount owing to GTE Supply, for which the petition projects, pursuant to Rule 1007, a claim of $32,741.94, on the ground that the debtor is owed more than that amount from GTE as a result of the claims for breach of contract, breach of warranty and because GTE Supply "confiscated" property in that amount. GTE argues that because it has agreed to provide an accounting for the property and assets that it retrieved, resolution of the Third Claim must await a determination of whether the debtor has valid claims or setoffs to the obligation owed GTE Supply. *GTE's Memorandum of Law,* at 3.

The parties have reversed the application of the concept of setoff as set forth in 11 U.S.C. § 553. Under section 553, setoff is a right asserted by a creditor. Therefore, GTE should be the party asserting setoff, not the trustee. After resolution of the Motion to Dismiss, the Amended Complaint contains one viable cause of action for fraudulent transfer. A party may not setoff a fraudulent transfer against the amount of a claim that the creditor holds against the debtor. *See, e.g., Bustamante v. Johnson (In re McConnell),* 934 F.2d 662, 667 (5th Cir.1991); *In re Candor Dia-mond Corp.,* 76 B.R. 342, 352 n. 12 (Bankr. S.D.N.Y.1987); *In re O.P.M. Leasing Services, Inc.,* 40 B.R. 380, 402 (Bankr. S.D.N.Y.), *aff'd,* 44 B.R. 1023 (S.D.N.Y. 1984), *aff'd,* 769 F.2d 911 (2d Cir.1985). In any event, any claim, whether it be for setoff, recoupment or otherwise, would be asserted by GTE and would only arise should the trustee prevail on her fraudulent transfer claim. Consequently, the Third Claim is dismissed under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this case by Federal Rule of Bankruptcy Procedure 7012(b).

The Fourth Claim of the Amended Complaint seeks an accounting from GTE Supply with regard to the assets and properties that GTE Supply seized from a warehouse. GTE Supply has agreed to provide the accounting requested in the Fourth Claim of the Amended Complaint and therefore, the Fourth Claim is dismissed subject to GTE Supply providing the requested accounting.

Because the Amended Complaint's cause of action for fraudulent transfer has not been dismissed as a result of GTE's Motion to Dismiss, pursuant to the stipulations so ordered by the Honorable Vincent J. Broderick and this court, this court will submit Proposed Findings of Fact and Conclusions of Law to the district court with regard to GTE's Motion to Withdraw the Reference.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The present motion made pursuant to Federal Rule of Bankruptcy Procedure 7012(b) is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) & (H).

2. GTE's Motion to Dismiss the First Claim of the trustee's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b), is granted as to the preference portion of the First Claim and denied as to the fraudulent transfer portion of the First Claim.

3. GTE's Motion to Dismiss the Second Claim of the trustee's Amended Complaint

**144**

pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b), is granted.

4. GTE's Motion to Dismiss the cause of action for willful misrepresentation asserted by the trustee in paragraph 23 of the Amended Complaint is granted.

5. The Third Claim of the Amended Complaint is dismissed under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this case by Federal Rule of Bankruptcy Procedure 7012(b).

6. GTE Supply has agreed to provide the accounting requested in the Fourth Claim of the Amended Complaint and therefore, the Fourth Claim is dismissed subject to GTE Supply providing the requested accounting.

SETTLE ORDER on notice in accordance with the foregoing.

[Editor's Note: Remaining text separately sets forth proposed findings and conclusions regarding withdrawal of reference and is deleted for purposes of publication.]