**In re RUBIN BROS. FOOTWEAR, INC., a New York Corporation, Debtor.**

**In re RUBIN BROS. FOOTWEAR, INC., a Georgia Corporation, Debtor.**

**RUBIN BROS. FOOTWEAR, INC., a New York Corporation, Rubin Bros. Footwear, Inc., a Georgia Corporation, Elliott Rubin and Cyrus Rubin, Plaintiffs,**

v.

**CHEMICAL BANK, Louis A. "Buddy" Solomon, and Sanford Astarita, Defendants.**

No. 83 CIV. 6910(SWK).

United States District Court, S.D. New York.

Sept. 19, 1990.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action involves claims pursuant to the Bankruptcy Code, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), state tort law, and state contract law. Jurisdiction is founded on 28 U.S.C. § 1331 and principles of pendent jurisdiction. Now before the court is the Report and Recommendation of Magistrate Joel J. Tyler (hereinafter "R & R") concerning summary judgment motions by all parties and objections thereto.

### Background

Because this opinion follows a prior opinion of the Court in this matter, *In re Rubin* *Bros. Footwear, Inc.,* 73 B.R. 346 (S.D.N.Y.1987) and the Magistrate Tyler's thorough Report, familiarity with both of which is assumed, the Court will present the facts in only a summary fashion.[1]

Rubin Bros. Footwear, Inc. (a New York Corporation) and Rubin Bros. Footwear, Inc. (a Georgia Corporation) (collectively, "Rubin Bros.") had an ongoing business relationship with Chemical Bank ("Chemical") which, by March 1982, included a debt of approximately $700,000. At that time, Rubin Bros. was experiencing severe financial difficulty, and considered filing a bankruptcy petition. Cyrus Rubin met with defendant Sandford Astarita ("Astarita"), the Chemical officer who handled the Rubin Bros. accounts. Astarita recommended that, rather than filing a bankruptcy petition, Rubin Bros. seek the services of Louis A. "Buddy" Solomon ("Solomon"), an adviser who specialized in rescuing foundering businesses. Rubin Bros. followed Astarita's advice.

Solomon took complete control of Rubin Bros. and attempted to repair the business rather than seek the protection of the bankruptcy laws. A great deal of the work done by Solomon involved restructuring Rubin Bros.' debts. Rubin Bros. initially borrowed additional money from Chemical against future accounts receivable. Cyrus and Elliott Rubin ("The Rubins") personally guaranteed repayment of Rubin Bros. original debt to Chemical. One result of this restructuring was the repayment to Chemical of the loans guaranteed by the Rubins. Chemical became unwilling to extend further credit to Rubin Bros., and requested that another creditor be found to take over the accounts receivable arrangement.

On April 13, 1983, another creditor purchased Chemical's loans to Rubin Bros. Shortly thereafter, Solomon left Rubin Bros. without notice and continued his work, begun some months before and pursuant to a court order, overseeing assets belonging to a company called "Occulens,"

1. Facts will be assumed as alleged by the non-moving party, and all inferences drawn favorably therefor, for purposes of these summary judgment motions.

of which Chemical was the secured lender.[2] On May 16, 1983, Rubin Bros. filed petitions for bankruptcy. The instant action was instituted shortly thereafter.

Plaintiffs make bankruptcy claims against defendant Chemical, asserting that payments made were voidable preferences or fraudulent transfers under 11 U.S.C. §§ 544, 547, and 548. Plaintiffs allege civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), against Chemical, Astarita, and Solomon. Plaintiffs also claim common law fraud, prima facie tort, fraudulent conspiracy, and intentional interference with business relations under New York and Georgia law. Finally, the individual plaintiffs seek recision of personal guarantees executed for the benefit of Chemical. Defendant Solomon asserts counterclaims for indemnity, damage resulting from false statements allegedly made by plaintiffs, abuse of process, and breach of his employment contract by nonpayment of wages. Chemical asserts counterclaims seeking indemnity from the Rubins in the event it is found liable to Rubin Bros., and attorney's fees incurred in defending this action.

In its prior opinion, the Court dismissed one of plaintiffs' RICO claims against Chemical and several of their common law fraud claims pursuant to Fed.R.Civ.P. 12(b)(6). *In re Rubin Bros.*, 73 B.R. 346 (S.D.N.Y.1987). After significant discovery, defendants Chemical and Astarita moved for summary judgment on all of plaintiff's claims pursuant to Fed.R.Civ.P. 56, or in the alternative for dismissal of plaintiffs' Eighth and Ninth claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Defendant Solomon also moved for summary judgment and dismissal of plaintiffs' amended complaint. The Rubins moved for summary judgment in their favor as to the invalidity of personal guarantees which they executed, as well as for summary judgment on the counterclaims asserted by Chemical and Astarita. The parties' motions for summary judgment were referred to Magistrate Tyler.

Magistrate Tyler has recommended that this Court grant defendants' motion for summary judgment as to all of plaintiffs' claims, with the exception of plaintiffs' nineteenth cause of action seeking a declaration as to the invalidity of the personal guarantees executed by the Rubins. The R & R recommends granting summary judgment for the Rubins on their nineteenth cause of action. Magistrate Tyler further recommends that plaintiffs' motion for summary judgment as to the counterclaims asserted by Chemical be granted. Finally, Magistrate Tyler recommends *sua sponte* dismissal of Solomon's counterclaims. Acceptance of Magistrate Tyler's recommendations by the Court would dispose of this litigation.

The corporate plaintiffs and defendants Chemical and Solomon have submitted objections to the Magistrate's report. The individual plaintiffs have not objected to Magistrate Tyler's report, but have responded to the objections of Chemical and Solomon.

Mindful of the Second Circuit's admonitions regarding the overuse of summary judgment, *post*, the Court nonetheless considers the Magistrate's recommendations to be well-reasoned and supported. As discussed below, the Court adopts the Magistrate's report in full.

### Discussion

1. Rubin Bros.' Objections

The objections presented by the corporate plaintiffs relate to Magistrate Tyler's recommendations as to several items: the absence of genuine factual issues relating to the alleged agency relationship between Chemical and Solomon; the applicability to this case of *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989); the applicability to the instant motion of a prior opinion of this Court; the validity of its claims under section 548(a) of the Bankruptcy Code; and the validity of its RICO claims.

---

**2.** The total payments to Solomon from Chemical arising from the Occulens account were about $8,000.

### a. Summary Judgment Standards

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[3] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

■ The Magistrate rightly pointed out that issues of state of mind are especially difficult to resolve on summary judgment, but that summary judgment is available as to such questions if the non-moving party fails to offer any concrete evidence from which a reasonable juror could return a verdict in his favor. R & R at 26 (citing *Liberty Lobby, supra*, 477 U.S. at 256, 106 S.Ct. at 2514). He also noted, somewhat ruefully, that the Second Circuit is often loath to affirm grants of summary judgment; the Circuit has also pointed out, however, that the use of Rule 56, even in complex litigation, should not be discouraged. R & R at 27 (citing *H.L. Hayden Co. of N.Y. v. Siemens Medical Systems*, 879 F.2d 1005, 1012 (2d Cir.1989) (other citations omitted)).

The disposition of the claims in this case turn on two central questions: first, whether there is a genuine issue of material fact going to the existence of fraud on the part of Chemical, Astarita, or Solomon; and second, whether there are facts to raise such an issue that Solomon was Chemical's agent during the events in question. The claims for common law fraud, fraudulent conveyance, and all of the RICO claims depend on the former, and the claims for voidable preferences and fraudulent conveyances depend on the latter. R & R at 28.

### b. Existence of an Agency Relationship

Rubin Bros.' claim that the circumstances surrounding Solomon's employment give sufficient indication of an agency relationship between Solomon and Chemical to create an issue of fact for trial does not dissuade the Court from adopting the Magistrate's recommendations.

■ Three elements must be established in order to prove the existence of an

---

**3.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

agency: (1) there must be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking. *S.E.C. v. American Board of Trade, Inc.,* 654 F.Supp. 361, 366 (S.D.N.Y.1987) (Kram, J.), *aff'd in part, dismissed in part,* 830 F.2d 431 (2d Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988). No agency relationship can be established where the alleged principal lacks the essential right of control over the alleged agent. *In re Shulman Transport Enterprises, Inc.,* 744 F.2d 293, 295 (2d Cir.1984) (citing Restatement (Second) of Agency § 1(1) (1959)); *Kyung Sup Ahn v. Rooney, Pace Inc.,* 624 F.Supp. 368, 370–71 (S.D.N.Y.1985) (citing *Mazart v. State,* 441 N.Y.S.2d 600, 109 Misc.2d 1092 (N.Y.Ct.Cl. 1981)).

■ Rubin Bros. fails to identify any facts tending to establish the elements of an agency relationship between Chemical and Solomon. Rather, both in its memorandum opposing defendants' summary judgment motion and its objections to Magistrate Tyler's recommendations, Rubin Bros. asserts only that Chemical recommended Solomon, that Solomon eliminated its debt to Chemical, and that Solomon left Rubin Bros. as soon as that debt was fully discharged. Rubin Bros. then concludes that Solomon acted as Chemical's agent. The record, however, contains no facts tending to establish that Solomon was Chemical's agent.

Magistrate Tyler found no evidence that Solomon acted on behalf of Chemical while employed by Rubin Bros. In fact, as Magistrate Tyler noted, Solomon's termination of the Rubins' guarantees was contrary to Chemical's interests. Further, the fact that Solomon acted to repay Rubin Bros.' debt to Chemical does not clearly support the proposition that he was acting on Chemical's behalf. Rubin Bros. and ultimately the Rubins personally were liable to Chemical for amounts not fully repaid. Thus, Solomon's repayment of the debt to Chemical actually benefited both Chemical and plaintiffs. In addition, there is no evidence suggesting that Rubin Bros. was coerced by Chemical into retaining a consultant, or into hiring Solomon in particular. Solomon reported only to Rubin Bros. while in its employ, and received no compensation from Chemical during that time. Solomon's legal costs in this action are not being borne by Chemical. The Court cannot conclude, on the record before it, that Solomon acted on behalf of Chemical as required to establish agency.

In addition to the reasons cited by the Magistrate, the Court notes that there were several occasions where Chemical refused to cooperate with several of Solomons' recommendations. For example, Solomon estimated at the end of August 1982 that Rubin Bros. would need an infusion of $200,000 cash to sustain the companies during the winter months. Despite that suggestion, Chemical was unwilling to extend the additional funds to Rubin Bros. Appendix of Plaintiffs/Debtors, at Ex. E., p. C000172. Again in early February 1983, Solomon requested $300,000 in additional financing from Chemical to keep Rubin Bros.' plant operating. Chemical again denied the request, directing Solomon instead to "shop this request with as many asset-based lenders as possible...." Appendix of Plaintiffs/Debtors, at Ex. M, p. C000161. These interactions strongly suggest that Solomon acted independently of Chemical and not for it.

Even assuming *arguendo* that a reasonable jury could conclude that the circumstances cited by Rubin Bros. permit an inference that an agreement had been reached whereby Solomon would act for the benefit of Chemical in satisfaction of the first and second requirements, no facts in the record indicate that Chemical had the essential right to control Solomon's actions. Rubin Bros. claims to have a "feeling" that the debt restructuring plan submitted to it by Solomon was first approved by Chemical. However, Magistrate Tyler found no hard evidence supporting this argument in the record. As Magistrate Tyler noted, in the absence of such evidence, the conclusion that Chemical controlled Solomon's ac-

tions can only be reached through "abject speculation." R & R at 46.

Rubin Bros. points to no specific facts tending to establish that an agency relationship existed between Solomon and Chemical, relying only on conclusory allegations and speculation. Because there is no evidence in the record tending to establish the existence of such a relationship, the Court finds that there is no genuine issue of fact as to the agency issue. For the above reasons, the Court adopts the Magistrate's recommendation of summary judgment for defendants on the agency issue.

### c. *Section 548(a)(2) Claim*

█ Rubin Bros. objects to Magistrate Tyler's recommendation that the Court dismiss any claims it might have under 11 U.S.C. § 548(a)(2). It claims that evidence in the record supports a conclusion that it received less than a reasonable equivalent for its payments to Chemical, and the Magistrate should not have rejected its claims under section 548(a)(2).

The complaint does not allege that Rubin Bros. received less than a reasonable equivalent for its payments to Chemical. Further, although Rubin Bros. claims that evidence supporting such a conclusion exists, it fails to identify that evidence. Such a conclusory allegation cannot serve to defeat a motion for summary judgment. The Court therefore finds that there is no genuine issue of material fact as to Rubin Bros. claims under 11 U.S.C. § 548(a)(2), and grants summary judgment for defendants on those claims.

### d. *Section 548(a)(1) Claim*

The corporate plaintiffs also object to Magistrate Tyler's recommendation of summary judgment on its claims under 11 U.S.C. § 548(a)(1). Under that statute, a transfer made within one year of the bankruptcy petition may be avoided by the trustee only if the transfer in question was made with "intent to hinder, delay, or defraud" creditors. Rubin Bros. claims that there was sufficient evidence of fraudulent intent to create a material issue of fact for trial. This, argument, however, does not dissuade the Court from adopting the Magistrate's report.

█ In order to avoid a transfer under section 548(a)(1), there must be actual intent to defraud creditors. *In re Marcus,* 45 B.R. 338, 342 (Bankr.S.D.N.Y.1984). Mere intent to prefer one creditor over another, although incidentally hindering or delaying creditors, will not establish a fraudulent transfer under section 548(a)(1). *In re Hartley,* 52 B.R. 679, 690 (Bankr.N. D.Ohio 1985) (citations omitted); *In re Lucar Enterprises, Inc.,* 49 B.R. 717, 718 (Bankr.S.D.Fla.1985) (citing *Irving Trust Co. v. Chase Manhattan Bank,* 65 F.2d 409 (2d Cir.1933); *Richardson v. Germania Bank,* 263 F. 320 (2d Cir.1919); *In re Braus,* 248 F. 55 (2d Cir.1917)) (other citation omitted); *see Marcus, supra,* 45 B.R. at 342.

█ For the purposes of 11 U.S.C. § 548(a)(1), plaintiff must show fraudulent intent on the part of the transferor, rather than on the part of the transferee. *In re Candor Diamond Corp.,* 76 B.R. 342, 349 n. 4 (Bankr.S.D.N.Y.1987). It has been held that, where a debtor is under the control of a creditor, fraudulent intent of the transferee may be imputed to the debtor, and the preferential payment avoided. *In re Cushman Bakery,* 526 F.2d 23, 31–32 (1st Cir.1975) (citing *Langan v. First Trust and Deposit Co.,* 293 N.Y. 604, 59 N.E.2d 424 (1944)), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976); 4 Collier on Bankruptcy 548–34. To defeat this motion for summary judgment, then, the record must demonstrate a genuine issue of material fact as to fraudulent intent by Rubin Bros. Any fraudulent intent of Chemical could be imputed to Rubin Bros. if (1) an agency relationship between it and Solomon could be established; or (2) it were established that Rubin Bros. was under the control of Chemical.

█ As discussed above, the voidable preferences claims stand, or in this case fall, with the agency claims. Rubin Bros. does not claim that it was under the control of Chemical for the purposes of section 548(a)(1). The Court has found, *ante,* that

the record establishes no genuine issue of material fact as to the existence of an agency relationship between Chemical and Solomon. Thus, only evidence of an intent to delay, hinder or defraud on the part of Rubin Bros. will suffice to defeat defendants' motions for summary judgment. Magistrate Tyler found no such evidence in the record, and in fact found evidence indicating that Rubin Bros. intended to repay its creditors. R & R at 65 & n. 19. Although plaintiff claims that evidence suggesting the requisite intent to defraud can be found in the record, it fails to point to any evidence in support of this claim. Such a conclusory allegation cannot serve to defeat the instant motions.

█ Even assuming, *arguendo*, that Chemical's relationships with either Solomon or Rubin Bros. were such that intent to defraud on its part would satisfy the requirements of section 548(a)(1), evidence of such intent to defraud cannot be found in the record. Although Chemical acted to reduce Rubin Bros. debt, thereby incidentally hindering or delaying other creditors, the record could not support a conclusion that the intent there exhibited rose to the level contemplated by section 548(a)(1). *See Lucar, supra,* 49 B.R. at 718 (knowing receipt by Bank of preferential payment of part of unsecured debt not fraudulent intent within meaning of 11 U.S.C. § 548(a)). Magistrate Tyler found no evidence that Chemical acted to defraud the other creditors of Rubin Bros. R & R at 66. Rubin Bros., although claiming that such evidence exists, points to none. Defendants' motion for summary judgment on the bankruptcy claims must therefore be granted.

### e. *The Fraud and RICO Claims*

Rubin Bros. argues that the record presents genuine issues of material fact as to the fraudulent nature of defendants' conduct upon which the alleged RICO violation is predicated, and the existence of the "pattern" required by the RICO statute. Rubin Bros.' arguments do not dissuade the Court from adopting Magistrate Tyler's recommendation that summary judgment

on the RICO and fraud claims be granted for defendants.

█ In order to establish fraud under New York law, plaintiff must establish the existence of five elements: (1) misrepresentation of material fact, (2) falsity, (3) scienter, (4) reliance, and (5) damages. *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980) (citing *Jo Ann Homes v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969)), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *In re Rubin Bros., supra,* 73 B.R. at 356; *Holding Capital Group, Inc. v. AP & Co.,* 673 F.Supp. 1274, 1277 (S.D.N.Y. 1987) (citations omitted). Further, the law of New York requires that fraud be established by "clear and convincing evidence." *Ajax Hardware Mfg. Corp. v. Industrial Plants Corp.,* 569 F.2d 181, 186 (2d Cir. 1977) (citing *Manchel v. Kasdan,* 286 A.D. 483, 144 N.Y.S.2d 694 (1st Dept.1955) (per curiam)).

█ It is essential to recovery in fraud "that defendant actually made to plaintiff a false or materially misleading statement." *Valdan Sportswear v. Montgomery Ward & Co.,* 591 F.Supp. 1188, 1190 (S.D.N.Y. 1984) (citing *Sabo v. Delman,* 3 N.Y.2d 155, 159, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 907 (1957)). Statements of opinion may constitute actionable fraud. *Magnaleasing, Inc. v. Staten Island Mall,* 428 F.Supp. 1039, 1042 (S.D.N.Y.1977). Mere predictions of the future, however, cannot form the basis for a fraud action "where both parties have equal access to the facts, or when it is obvious that the declarant is using a subjective standard." *Id.*

█ In order to satisfy the element of reliance, the plaintiff must prove that "the hearer [was] ignorant of the falsity of the representation." *Sutro Bros. & Co. v. Indemnity Ins. Co.,* 264 F.Supp. 273, 288 (S.D.N.Y.), *aff'd,* 386 F.2d 798 (2d Cir.1967). Where the plaintiff has complete and full knowledge of the facts, no action in fraud can be maintained. *Rosenbloom v. Adams, Scott & Conway, Inc.,* 521 F.Supp. 372, 390 (S.D.N.Y.1981) (citing W. Prosser, Law of Torts 714–15 (4th ed.1971)) (other

citations omitted), *aff'd*, 688 F.2d 816 (2d Cir.1982).

Magistrate Tyler found no evidence that Astarita made any statement to the Rubins as to the desirability of filing for bankruptcy. In fact, the Rubins' own testimony indicates that the possibility of bankruptcy was never discussed by either of the Rubins and Astarita. R & R at 33–35 (citing C. Rubin Dep., at 63, 101, 118–119, 541–42; E. Rubin Dep., at 336–37). Thus, Magistrate Tyler recommended dismissal of the fraud claim alleged in paragraph 20(a) of the complaint.

■ As to the alleged fraud perpetrated on Rubin Bros.' creditors through the refinancing plan, Magistrate Tyler found evidence indicating that the Rubins were aware of the plan, and of its possible consequences. R & R at 36–38 (citing Appendix of Plaintiff/Debtors, at Ex. I [Deposition of Richard Marlin, Esq.] at 90–93; C. Rubin Dep., at 78; other citations omitted). As plaintiffs were fully aware of the facts surrounding the proposed refinancing plan and its implications, no fraud claim could lie for that action. On this basis, Magistrate Tyler recommended dismissal of that claim.

Finally, in paragraphs 20(b), (c), and (e) of the complaint, plaintiffs allege that Chemical failed to reveal the fact that Solomon would act as Chemical's agent, and solely for Chemical's benefit. However, Magistrate Tyler found evidence that Solomon did not act solely for the benefit of Chemical. R & R at 38–39. Magistrate Tyler also found no genuine issue of material fact as to the lack of an agency relationship between Solomon and Chemical. These recommendations have been adopted by the Court, *ante*.

In its Objections, plaintiff has, once again, identified no evidence tending to substantiate its fraud claims, relying instead upon conclusory allegations as to the existence of genuine issues of material fact as to the fraud claims. Such allegations cannot defeat the motions for summary judgment on the fraud claims. The Court therefore adopts the Magistrate's recommendations and grants defendants' motions for summary judgment on plaintiffs' fraud claims.

■ Because the Court finds that plaintiff's fraud claims are without merit, and because the court finds that Chemical lacked the intent required to establish bankruptcy fraud, the Court finds no genuine issue of material fact as to the existence of predicate acts of racketeering activity. In the absence of racketeering activity, the Court need not reach the pattern and enterprise requirements of the RICO statute and plaintiffs' RICO claims must fail. The Court therefore grants summary judgment for defendants on plaintiffs' RICO claims.

#### f. *Applicability of Levit*

■ Finally, Rubin Bros. claims that the Magistrate ignored the factual findings of this Court in prior opinions concerning this case, and that the Magistrate erroneously failed to apply *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989). *Levit* held that preferential payments to outside creditors could be recovered by the trustee if made within one year of the bankruptcy petition, instead of the usual 90 days, if the debt was guaranteed by an insider.

As Magistrate Tyler noted in his Report, *Levit* is a much criticized case, whose reasoning has not been followed outside of the Seventh Circuit. R & R at 55 n. 17. Also, as a policy matter, the Court believes that the *Levit* rule would likely impede the availability of credit to ailing businesses. Because of the its potential policy implications, and because the Second Circuit has not adopted it, the Court declines to apply the *Levit* rule to the instant case.

#### g. *Failure to Apply the Court's Prior Opinion*

■ Finally, Rubin Bros.' claim that the Magistrate failed to apply the "findings of fact" from the Court's ruling on a prior motion for dismissal pursuant to Fed.R. Civ.P. 12(b)(6) is without merit. In its opinion of April 10, 1987, the Court merely addressed the potential merit of claims as

pleaded, and did not make findings of fact. As required under Fed.R.Civ.P. 12(b)(6), the prior opinion accepted the factual allegations of the Complaint as true for purposes of considering whether a claim had been stated. Thus, this objection does not dissuade the Court from adopting the Magistrate's recommendations.

### 2. Chemical's Objections

Chemical presents two objections to the Magistrate's Report. Initially, Chemical objects "for the record" to Magistrate Tyler's recommendation that summary judgment on its first four counterclaims be granted for plaintiffs. Chemical objects in earnest to Magistrate Tyler's recommendation that summary judgment on Chemical's fifth, sixth and seventh counterclaims seeking attorney's fees and other costs of litigation be granted for plaintiffs.

The first four counterclaims asserted by Chemical were contingent on the success of plaintiff's bankruptcy claims, seeking an offset of any amounts due Chemical as an unsecured creditor in bankruptcy against any repayment due to Rubin Bros. and recovery from the Rubins on their personal guarantees of the loans in question. Since the Court adopts the Magistrate's recommendation dismissing plaintiffs' bankruptcy claims, *ante*, restitution of monies paid to Chemical by Rubin Bros. will not be required, and the loans personally guaranteed by the Rubins remain fully repaid. Chemical's contingent counterclaims are thus moot. The Court adopts the Magistrate's recommendation to grant summary judgment for plaintiffs on Chemical's first four counterclaims.

The Court similarly rejects Chemical's second objection to the Magistrate's report. Magistrate Tyler found that the guarantees executed by the Rubins did not contemplate recovery of costs of litigation under the circumstances of the instant case. The relevant portion of the guarantee agreement provides that "[Cyrus and Elliott Rubin] shall reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with any of the liabilities of the Borrower or the collection thereof." Chemical Bank Objections at 6. That this boilerplate language does not contemplate recovery of attorney's fees arising out of a seven-year complex federal lawsuit such as this one cannot genuinely be disputed. As a matter of law such guarantees permit recovery of costs incident to ordinary collection efforts, and do not contemplate recovery in unusual circumstances such as these. Chemical does not and cannot identify evidence indicating a contrary intent. The Court therefore adopts Magistrate Tyler's recommendations as to Chemical's fifth, sixth and seventh counterclaims.

### 3. Solomon's Objections

Solomon claims that since no summary judgment motion concerning his counterclaims for indemnity, fraud and abuse of process was referred to the Magistrate, the Magistrate had no authority to make recommendations relative to them. In the same vein, Solomon argues that, since no motion for summary judgment was made regarding his counterclaims, granting summary judgment *sua sponte* on his counterclaims would amount to unfair surprise and denial of due process. Solomon also argues that, on the merits, summary judgment should not be granted as to each of his counterclaims.

#### a. *Authority of the Magistrate to Recommend Sua Sponte Dismissal*

Solomon's argument that Magistrate Tyler acted outside his authority in recommending summary judgment is a technicality which need not long delay the Court. Solomon cites *Parks v. Collins*, 761 F.2d 1101, 1106 (5th Cir.1985) for the proposition that, without an express delegation of authority from the district court, a magistrate lacks jurisdiction to consider a motion. However, *Parks* involved a situation where the magistrate had entered an order pursuant to Fed.R.Civ.P. 60(b) vacating a default judgment. By contrast, here Magistrate Tyler made only nonbinding recommendations, which the court need not fol-

low. Thus, *Parks* does not apply. Further, even if Magistrate Tyler did act outside of his authority in recommending *sua sponte* summary judgment, the Court would be free to reach the same conclusion of its own accord. This objection therefore does not affect the Court's action on Magistrate Tyler's report.

### b. *Sua Sponte Summary Judgment*

 The argument that *sua sponte* summary judgment would work a denial of due process on Solomon is without merit. The Second Circuit has held that, where it is clear that a case does not present an issue of material fact, summary judgment may be granted *sua sponte. Project Release v. Prevost,* 722 F.2d 960, 969 (2d Cir.1983) (court may grant summary judgment *sua sponte* when it is clear that claim presents no issue of material fact) (citing *FLLI Moretti Ceriali v. Continental Grain Co.,* 563 F.2d 563, 565 (2d Cir.1977)). In *FLLI Moretti,* the Second Circuit held that summary judgment could be granted *sua sponte* as long as the parties were afforded adequate opportunity to make the relevant factual presentations. Although the *FLLI Moretti* Court found that summary judgment should not have been granted in that case, there the trial court had failed to provide the parties with the required procedural opportunities.

Solomon cannot claim such defects in the instant proceedings. This action has been before the Court for over six years. During that time, there has been copious discovery and two rounds of motion practice directed at the Complaint, including, most recently, the opportunity to file papers before the Magistrate and this Court as to the existence of genuine issues of fact. If, after these extensive proceedings, Solomon can point to nothing in the record raising such issues as to his counterclaims, *sua sponte* summary judgment is appropriate, will serve judicial efficiency, and will protect all of the parties from further procedural wrangling. Accordingly the Court considers that it may enter summary judgment on these counterclaims, *sua sponte,* if it is warranted.

Solomon points to *Trusthouse Forte, Inc. v. 795 Fifth Ave. Corp.,* 756 F.2d 255, 259 (2d Cir.1985), for the proposition that summary judgment may not be granted in the absence of notice and the opportunity to make an appropriate factual presentation. *Trusthouse Forte* involved a situation where plaintiff moved for summary judgment. Plaintiff expressly preserved the right to raise the waiver issue at a later time. The Court granted plaintiff's motion for summary judgment, but also ruled against plaintiff on the waiver question. The Second Circuit reversed the district judge's order insofar as it passed on the waiver issue because plaintiff had reserved the issue and did not have an opportunity to make the relevant factual presentation. As noted above, however, Solomon cannot claim that he has not been afforded an adequate opportunity to oppose summary judgment here.

### c. *Abuse of Process*

 Solomon's objection to Magistrate Tyler's recommendation that his abuse of process counterclaim be dismissed requires only brief comment. Solomon claims that he had no opportunity to present evidence on the claim, that Magistrate Tyler incorrectly applied New York abuse of process law, and that the claim therefore should not be dismissed as a matter of law. Solomon Memorandum, at 11 & n. 5. In order for Solomon's counterclaim to survive, he must present more than just a sufficiently pled complaint. Solomon must identify evidence creating a genuine issue of material fact as to his claim. In spite of the extensive discovery which Solomon has had of counterdefendants, he fails to present, in his prior submissions and in his objections to the Magistrate's report, evidence supporting his abuse of process claim, under either the legal theory presented in his memorandum or that of Magistrate Tyler. The Court therefore adopts Magistrate Tyler's recommendation as to Solomon's counterclaim for abuse of process. Summary judgment is granted in favor of plaintiffs-counterclaim defendants on this claim.

Solomon cites *Greenwald v. American Medcare Corp.*, 666 F.Supp. 489, 493 (S.D. N.Y.1987), for the propositions that "an active wrongdoer must indemnify someone who is, at most, only passively at fault," and that such indemnification may include reasonable attorney's fees. Thus, Solomon argues that since the Rubin Bros. were the actual wrongdoers in this case, he should have the opportunity to recover his attorney's fees from them. Solomon's argument does not work in this case, because no wrongdoing has been found by any party here. *See ante* (adopting Magistrate's recommendations to dismiss Rubin Bros.' claims); *see also* R & R at 47–48 (recommending dismissal of fraud claims); *id.* at 50 (recommending dismissal of prime rate claims); *id.* at 58, 66, 68 (recommending dismissal of bankruptcy claims); *id.* at 85, 87 (recommending dismissal of RICO claims). Thus, the Magistrate's recommendation that summary judgment be granted with respect to Solomon's counterclaims for indemnity is adopted.

### e. *The Fraud Counterclaim*

Solomon's objections to summary judgment on his counterclaim for fraud also fails. Magistrate Tyler recommended dismissal of Solomon's fraud counterclaim because he found that no fraud had occurred, and that the complaint therefore failed by its own terms. R & R at 95 (citing Solomon Answer at ¶ 81). Solomon argues alternative theories upon which his claim should survive. First, he claims that any fraud for which he is liable resulted from fraud perpetrated by the Rubins or Rubin Bros. Alternatively, Solomon claims that if there was no fraud, he is entitled to recover litigation costs because of the baseless nature of the claims against him.

■ Since the Court adopts the report of the Magistrate insofar as it finds that the transactions forming the basis of this action involved no fraud, only Solomon's alternative claim need be analyzed. Ordinarily, under the "American Rule," "the prevailing litigant is ... not entitled to collect a reasonable attorneys' fee from the loser." *Oliveri v. Thompson*, 803 F.2d 1265, 1271 (2d Cir.1986) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). Attorneys' fees may, however, be awarded where the defendant has been forced to litigate a meritless claim, pursuant to the inherent powers of the Court or pursuant to Fed.R.Civ.P. 11. Attorneys' fees may be awarded pursuant to the Court's inherent power if there is

> 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes ...'

*Oliveri, supra,* at 1272 (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986)). Pursuant to Fed.R.Civ.P. 11, a baseless claim will yield an award of attorneys' fees only when it is "patently clear that a claim has absolutely no chance of success." *Oliveri, supra,* at 1275 (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)).

■ The Court is prepared to make neither such finding on the record before it. Solomon presents no more than conclusory allegations to the effect that plaintiffs brought this action for any improper purpose. Further, the Court does not find that the claims asserted against Solomon were so patently without color that plaintiff must have known that they would fail before the action was brought. The Court therefore adopts the Magistrate's recommendation as to Solomon's third counterclaim.

### f. *The Contract Claim*

■ Solomon objects to the Magistrate's recommendation that the Court decline to exercise pendent jurisdiction over his contract claims in light of the dismissal of all federal claims in this matter. The Second Circuit has held that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims can be disposed of by summary judgment." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53

(2d Cir.1986) (citation omitted). Factors to be considered include (1) the amount of time and energy invested by the Court in the State law claims; (2) the link between the state claim and federal policy; and (3) the necessity of a trial of the facts underlying the state claim for the purpose of adjudicating the federal claim. *McLearn v. Cowen & Co.*, 660 F.2d 845, 848 & n. 2 (2d Cir.1981).

 The record in this case does not support exercise of pendent jurisdiction over Solomon's $3,600 contract counterclaim. It is true that, as Solomon notes in his memorandum, this case has been before the Court for more than six years. However, it can hardly be asserted, as Solomon argues in his brief, that the state contract claim presents any significant federal interest since it does not involve bankruptcy, RICO, or any other federal question presented by this litigation. Moreover, there has been no trial by this court of the facts underlying Solomon's contract counterclaim. The balance of these factors does not overcome the presumption that this Court should decline to exercise pendent jurisdiction when the federal claims have been dismissed. Thus, the *McLearn* factors indicate that exercise of pendent jurisdiction is inappropriate.

Additional arguments presented by Solomon in his Memorandum fail to persuade. Solomon claims that failure to exercise pendent jurisdiction here will force him to engage in piecemeal litigation. This, however, is not the case. Because only Solomon's contract counterclaim will remain viable, he will litigate in only one court. Solomon also claims that paucity of resources would prevent him from refiling the contract counterclaim in state court, and that forcing him to litigate his claims in a state court unfamiliar with this action would afford a tactical advantage to the counterclaim defendants. The Court finds

no significant difference between the cost of litigating Solomon's contract counterclaim in state and federal court. The parties will have access to the record developed during the proceedings before this Court so that there will be little if any need for duplicative efforts by the parties in subsequent litigation. Further, the Court cannot see how litigation in a court unfamiliar with this action would necessarily benefit any one party rather than another. Finally, Solomon's argument that the counterclaim defendants will not be prejudiced by the litigation in federal court is of little import. The fact that counterclaim defendants would not be prejudiced by litigation in a federal forum is inconsequential if federal subject matter jurisdiction is lacking.[4]

In light of the dismissal of all federal claims in this matter, exercise of pendent jurisdiction over Solomon's contract counterclaim would be inappropriate. The Court therefore adopts Magistrate Tyler's recommendation that Solomon's fourth counterclaim be dismissed for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(h)(3).

### Conclusion

For the foregoing reasons, the Court adopts Magistrate Tyler's recommendations. Summary judgment is granted for defendants as to plaintiffs' first, second, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, twentieth, and twenty-second claims, and on plaintiffs' fraud claims.[5] Summary judgment is granted for plaintiffs on their nineteenth and twenty-first claims, on all counterclaims asserted against them by Chemical, and on the first, second, third, and fifth counterclaims asserted against them by Solomon. The fourth counterclaim asserted by Solomon is

---

**4.** As Magistrate Tyler pointed out, such dismissal will not prejudice Solomon from a statute of limitations point of view. Solomon has six months from the date of this Opinion in which to refile in state court. R & R at 96 n. 29 (citing N.Y. CPLR § 205(a); *Dunton v. County of Suffolk*, 729 F.2d 903, 911, n. 8 (2d Cir.1984)). The

Court adds that Solomon could simply file a claim as a general creditor in bankruptcy court.

**5.** Previously, the Court had dismissed plaintiffs' Third and Tenth Claims and the fraud claims under 20(d), 20(g), 20(h), 20(i), 20(j), and 20(k).

dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3), without prejudice to refile in state court.

This Order closes the case.

SO ORDERED.